STATE OF CONNECTICUT *v.* DEAN CHARLES CAMPANARO (AC 33252)

DiPentima, C. J., and Beach and Alvord, Js.

Argued September 26—officially released November 19, 2013

*Peter G. Billings*, with whom was *Sean P. Barrett*, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Elizabeth C. Leaming*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Dean Charles Campanaro, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (B), one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), one count of delivery of alcohol to a minor in violation of General Statutes § 30-86 and one count of enticing a minor in violation of General Statutes § 53a-90a.[1] On appeal, the defendant claims that (1) the court improperly denied his request for a sixty day continuance, (2) the court improperly refused to conduct an in camera review of the victim's medical, clinical, therapeutic and counseling records, and (3) he was denied his sixth amendment right to assistance of counsel when the prosecutor obtained his trial strategy

[1] The jury found the defendant not guilty of seven counts of sexual assault in the second degree in violation of § 53a-71 (a) (1), one count of attempt to commit sexual assault in the second degree in violation of General Statutes §§ 53a-71 (a) (1) and 53a-49, four counts of sexual assault in the fourth degree in violation of § 53a-73a (a) (1) (B), one count of risk of injury to a child in violation of § 53-21 (a) (1), one count of risk of injury to a child in violation of § 53-21 (a) (2), and one count of tampering with physical evidence in violation of General Statutes § 53a-155 (a) (1).

and failed to notify either the defendant or the court. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At the time of the incidents at issue, the victim, E,[2] a fourteen year old female, was best friends with H, the defendant's oldest daughter. The defendant was the assistant coach for a town softball team that included both girls. E lived with her mother, her younger sister and her mother's boyfriend. During the summer of 2008, E and H were often together, frequently spending nights at each other's houses.

The Campanaro family, which included the defendant, his wife and their two daughters, planned to take their camper to Lake George and Niagara Falls in New York State. They intended to leave July 3, 2008, and return approximately ten days later. H asked Noreen Campanaro, her mother, if E could accompany them on their vacation. The defendant told E's mother that E should come with them to New York because it would make H happy, keep H busy, and the girls would have a good time. E's mother consented.

On vacation, E noticed that the defendant often looked at her when they were at the Lake George campground, which was their initial destination. After several days, they proceeded to travel to Naples, New York, where friends of the Campanaro family lived in a log cabin near the mountains in a secluded area. Very late one evening, while camped at that location, the defendant motioned for E to leave the camper, and he took her to an area behind a brush pile where they had sexual relations for the first time. Additional incidents of a sexual nature happened during that trip.

---

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

The same day that E returned from the camping vacation, the defendant sent her a text message about her "pretty blue eyes." From that point on, the defendant and E regularly communicated via text messages, telephone calls and e-mails. Some of the messages were benign, but a number of communications, including attached photographs, were explicitly sexual in nature. E's mother noticed that E was texting constantly and indicated that she was not pleased with the increased communications. At times, she confiscated E's cell phone for violating the house rules relating to permitted times for texting.

The defendant secretly met with E on several occasions following the camping trip. On August 8, 2008, E was scheduled to volunteer at a local hospital in the late afternoon. Before she left for work, the defendant sent her an e-mail stating that his wife and daughters were leaving for Cape Cod, Massachusetts, that day. E's mother drove her to the hospital, and, shortly after E's arrival, the defendant telephoned the hospital and left a message for E to call his home number. When E returned the call, the defendant told her to contact her mother and ask if she could visit with H after she finished her work at the hospital. E did as instructed and told her mother that the Campanaros would pick her up at the hospital and bring her home later that evening. She then asked the nurse in her assigned unit if she could leave early because she wanted to go bowling with some friends. She received permission to leave at 6:30 p.m. The defendant arrived at the hospital in his truck and drove E directly to his house.

E told the defendant that she was nervous, and he gave her a mixed drink of vodka and fruit punch. After she finished the first drink, the defendant thought E still appeared nervous and provided her with a second mixed drink. The defendant and E then had sexual relations. At approximately 9:30 p.m., E's mother

became concerned because she thought E was supposed to contact her to let her know whether E needed a ride home or would be spending the night with H. Because E's mother had taken away E's cell phone before she left for the hospital, E's mother texted H and inquired as to the girls' plans for that evening. H texted back and informed E's mother that she, her mother and her sister were in Cape Cod and that the defendant had stayed in Connecticut.

E's mother immediately called the Campanaro residence. No one answered the telephone the first time that she called. On her second attempt, the defendant answered, and E's mother asked if E was in his house. The defendant gave the receiver to E, and E's mother, without asking for an explanation at that time, informed E that she and her boyfriend were coming to the defendant's house. They arrived approximately five minutes later, and E came out of the defendant's house and got into their car. E's mother noticed that her daughter's hair was messy and tousled and that she smelled of alcohol.

For the next few days, when questioned by her mother, E continued to deny that anything inappropriate had happened between her and the defendant. E had an older sister, D, who was married and lived in her own home with her husband and children. E was close to D, and E's mother brought E to D's house in the hope that she would confide in D. After additional questioning, E finally admitted that she had had sexual intercourse with the defendant. At some point that day, the decision was made to contact the police, and E gave her first written statement about the incidents. The next morning, E's mother took E to a gynecologist for an examination. On the way home, E told her mother that she did not want to live anymore. E's mother, frightened at E's demeanor, called her therapist and was told to take E to Natchaug Hospital. E was admitted

to the hospital for inpatient therapy and was discharged one week later. While at the hospital, E gave a second statement to the police that provided additional details of her encounters with the defendant. A day or two after her release, E provided a third statement to the police.[3]

A police sergeant came to E's residence when she was at Natchaug Hospital and told E's mother that he needed the clothing that E was wearing on the night of August 8, 2008. E's mother retrieved some of the clothing from the laundry, although the clothing already had been washed. She went to the hospital to get the bra and camisole that E had been wearing that night, which had not yet been laundered. All of these articles of clothing were delivered to the police.

After obtaining a search warrant, the police went to the defendant's residence on August 19, 2008, and seized his computers and cell phones. The defendant was arrested on September 29, 2008. After his arrest, buccal swabs were taken from E and the defendant for DNA analysis in order to compare the DNA testing results from the clothing E wore the evening of August 8, 2008.

Jury selection commenced on May 25, 2010. On May 26, 2010, the defendant filed a motion in limine to preclude the state's DNA evidence or, in the alternative, for a sixty day continuance of the trial. In that motion, the defendant represented that the state provided defense counsel with a DNA evidence report on May 25, 2010, and that the test results on E's bra were inculpatory to the defendant. The defendant, although accepting the state's claim that the delayed preparation of the report was inadvertent, argued that the evidence

---

[3] E gave her fourth and final written statement to the police several months later, on February 9, 2009, after a particularly bad day at school. E was being harassed by her classmates and went to the school counselor for advice. She then provided even more details about the incidents with the defendant.

should be excluded or that the trial should be continued for sixty days "in order that he may adequately deal with the new evidence." On May 26, 2010, the court interrupted jury selection to hear the parties' arguments on the motion. The court then issued its ruling, after noting that General Statutes § 54-86k (c)[4] provides that "the presumptive amount of time that a party needs to respond to a disclosure of a [DNA] report is twenty-one days." Referring to the statute, the court granted the motion for a continuance and continued the start of evidence to June 22, 2010. The new trial date was twenty-seven days after the court's ruling.

Following a nine day trial, the jury returned its verdict finding the defendant guilty of eight of the twenty-three charges. The court accepted the verdict and sentenced the defendant to a total effective term of thirty years imprisonment, execution suspended after serving fourteen years, to be followed by ten years of probation, payment of a $1000 fine and sex offender registration. This appeal followed.

I

The defendant's first claim is that the trial court improperly denied his request for a sixty day continuance after the state failed to comply with § 54-86k. Specifically, the defendant argues that the court abused its discretion[5] because the failure to grant a sixty day

---

[4] General Statutes § 54-86k (c) provides in relevant part: "At least twenty-one days prior to commencement of the proceeding in which the results of a DNA analysis will be offered as evidence, the party intending to offer the evidence shall notify the opposing party, in writing, of the intent to offer the analysis and shall provide or make available copies of the profiles and the report or statement to be introduced. In the event that such notice is not given, and the person proffers such evidence, then the court may in its discretion either allow the opposing party a continuance or, under the appropriate circumstances, bar the person from presenting such evidence. . . ."

[5] "The determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Victor C.*, 145 Conn. App. 54, 68, 75 A.3d 48 (2013).

continuance "impaired the defendant's ability to defend himself and, in fact, was needed in order for the defendant to properly defend himself." The following additional facts are necessary to resolve this claim.

When the court addressed the defendant's motion in limine on May 26, 2010, the prosecutor told the court that she had indicated to defense counsel several weeks prior that it was likely that the state would be presenting DNA evidence. The prosecutor stated that her forewarning gave defense counsel the opportunity to find and consult with a DNA expert at that time. Defense counsel responded that the report on E's bra was highly prejudicial to the defendant, and that he needed time to locate a scientist to assist him in interpreting the results and to obtain the necessary funds to pay for that expert opinion. The court inquired as to the length of the continuance that the defendant was seeking, and defense counsel responded that he had asked for sixty days in his motion "[a]nd that was just a ballpark, Your Honor." The court then referred to § 54-86k (c) and asked: "Doesn't that suggest that a twenty-one day period to respond has been determined by the legislature to be presumptively sufficient?" Defense counsel responded: "Yes, Your Honor. I would agree with you completely. . . . I'm just suggesting, Your Honor, yes, twenty-one days would seem to be a minimum standard by which a party should have advance notice and should be able to deal with it. *And quite candidly, I can respond in twenty-one days.*" (Emphasis added.) After a few additional comments by the parties and the court, the court issued its ruling granting the continuance and setting a new trial date of June 22, 2010. The court inquired if there was anything further to discuss, and defense counsel said, "[n]o . . . ."

Our careful review of the record and transcripts reveals that defense counsel never asked for additional time to respond to the DNA report or to consult with

his expert. At the end of each trial day, the court routinely asked counsel if any issues needed to be addressed. Defense counsel never indicated that the amount of time granted by the court for a continuance was inadequate for his preparation of a defense with respect to the state's DNA evidence. Under these circumstances, the court reasonably could have concluded that the defendant was satisfied with the twenty-seven day continuance granted by the court and that he had abandoned his initial request for a sixty day continuance. "For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." (Internal quotation marks omitted.) *State* v. *Jorge P.*, 308 Conn. 740, 753, 66 A.3d 869 (2013).

We conclude that defense counsel acquiesced to the court's ruling with respect to the amount of time granted for the continuance of the trial date. He has, therefore, abandoned any claim that the failure to grant a sixty day continuance deprived him of "effective and competent assistance of counsel" and his "ability to present a defense."

II

The defendant's next claim is that the court improperly refused to conduct an in camera inspection of E's medical, clinical, therapeutic and counseling records. The defendant concedes that they are protected records but argues that the court's failure to review them deprived him of his rights under the due process and confrontation clauses of the state and federal constitutions. We disagree.

On June 15, 2010, the defendant filed a motion in limine for the court to conduct an in camera review of E's protected records for the period from January, 2008, through the date of the motion. At the hearing on the

motion held on June 16, 2010, the defendant argued that E's protected records should be reviewed by the court in camera because E provided a statement to the police in which she said that she had had a prior sexual relationship with a teenage male prior to her relationship with the defendant, and then she subsequently claimed that the defendant was her first sexual partner. The defendant argued that he expected to find information in those records pertaining to sexual partners that he could use for impeachment purposes. The defendant also claimed that any statements given by E to her treatment providers at Natchaug Hospital regarding the defendant would be "highly probative" and useful in his presentation of his defense at trial.[6] The court concluded that the defendant failed to make the requisite preliminary showing that would justify an in camera review of E's protected records and denied the defendant's motion.

"This court will review a trial court's denial of a defendant's request to conduct an in camera review of confidential records pursuant to our standard of review for evidentiary rulings. . . . Therefore, [w]e review a court's conclusion that a defendant has failed to make a threshold showing of entitlement to an in camera review of statutorily protected records . . . under the abuse of discretion standard. . . . We must make every reasonable presumption in favor of the trial court's action. . . . The trial court's exercise of its discretion will be reversed only where the abuse of discretion is manifest or where injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *State* v. *McClelland*, 113 Conn. App. 142, 159, 965 A.2d 586, cert. denied, 291 Conn. 912, 969 A.2d 176 (2009).

---

[6] We note that E testified at trial that she did not discuss any of the incidents with the defendant during her stay at the hospital. She testified that she "just wanted to get away from it all."

"[O]ur Supreme Court has established that to compel an in camera review of confidential records, a defendant must make a preliminary showing that there is a reasonable ground to believe that failure to review the records likely would impair the defendant's right to confrontation. . . . To meet this burden, the defendant must do more than assert that the privileged records may contain information that would be useful for the purposes of impeaching a witness' credibility. . . . As explained by our Supreme Court: [T]he defendant's offer of proof should be specific and should set forth the issue in the case to which the [confidential] information sought will relate." (Citations omitted; internal quotation marks omitted.) Id., 160–61.

In the present case, the defendant's request for an in camera review was not specific and he did not sufficiently set forth the issue in the case to which the information sought would relate. "[T]he right to cross-examine witnesses does not include the power to *require* the pretrial disclosure of any and all information that *might* be useful in contradicting unfavorable testimony." (Emphasis in original; internal quotation marks omitted.) *State* v. *Slimskey*, 257 Conn. 842, 854, 779 A.2d 723 (2001). The general assertion that such information, if found, could be useful or helpful to his defense was nothing more than a "general fishing expedition" into protected and confidential records. A showing to warrant an in camera review requires more than mere speculation. On the basis of the record before the trial court, we cannot conclude that it abused its discretion in determining that the defendant had not made a sufficient showing to compel an in camera review of E's medical, clinical, therapeutic and counseling records.[7]

---

[7] Moreover, we note that the record reflects that defense counsel was afforded ample opportunity to cross-examine E about any inconsistencies in her statements. Defense counsel conducted an extensive cross-examination of E on June 23 and 24, 2010.

## III

The defendant's final claim is that he was denied his sixth amendment right to assistance of counsel when the prosecutor obtained his trial strategy and failed to notify either the defendant or the court. The defendant argues that a five page document, which the prosecutor obtained from Noreen Campanaro, his then-estranged wife,[8] outlined his theory of the defense and his version of the events for which he was charged. He claims that the document, on its face, was protected by the attorney-client privilege and that the prosecutor's failure to disclose her receipt of the document placed him "in a fundamentally unfair position . . . ." The following additional facts are necessary to resolve this claim.

After the defendant's arrest, while he was free on bond, he prepared a five page, single spaced document in which he countered E's version of the events that transpired between them. On February 4, 2009, he sent Noreen Campanaro the document as an attachment to an e-mail. She learned that he also had H, their daughter, read the document when she was at his parents' house. Further, he sent a copy to his friend in New York. The document never was referenced to the jury, and it was not admitted into evidence as a full exhibit.

On June 7, 2010, the defendant filed a motion in limine "to assert the marital communications privilege to preclude testimony of, or production of his written communications by, his former spouse." Before Noreen Campanaro's testimony, and outside of the presence of the jury, the court heard argument from counsel regarding the marital communications privilege and the admissibility of expected testimony and certain written documents, including the five page document at issue. After some discussion, the question arose as to whether the marital communications privilege had been waived

---

[8] The defendant and Noreen Campanaro were divorced at the time of trial.

with respect to the five page document because of alleged disclosure to third parties. At that point, Noreen Campanaro testified outside of the jury's presence that H, their daughter, and, additionally, the defendant's friend in New York also received copies of that document. Defense counsel then stated: "We're no longer asserting it based on the witness' testimony here under oath this morning. I no longer claim a marital privilege to this five page memo, Your Honor."

Significantly, the defendant never mentioned the attorney-client privilege as a basis for excluding the five page document, nor did he claim that the prosecutor had violated his sixth amendment privilege to effective assistance of counsel when she failed to inform the court that a copy of the document had been provided to her by Noreen Campanaro. The defendant, now conceding that the issue had not been raised before the trial court, asks this court for review of his unpreserved claim under State v. Golding, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[9]

The defendant claims that the record is sufficient in this case to review his alleged claim of error because the five page document was marked for identification and the relevant facts were addressed when discussing the marital communications privilege before the trial court. He claims that the second prong of Golding has been satisfied because the sixth amendment right to assistance of counsel is of constitutional magnitude

---

[9] Under Golding, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) State v. Golding, supra, 213 Conn. 239–40.

alleging the violation of a fundamental right. Citing *State v. Lenarz*, 301 Conn. 417, 22 A.3d 536 (2011), cert. denied, 565 U.S. 1156, 132 S. Ct. 1095, 181 L. Ed. 2d 977 (2012), he argues that the third prong of *Golding* has been met because the constitutional violation clearly deprived him of a fair trial. Finally, he claims that the state failed to show that the constitutional violation was harmless beyond a reasonable doubt.

The state counters that the record is inadequate for us to review this claim because the trial court never was presented with the opportunity to make necessary findings of fact and conclusions of law with respect to the attorney-client privilege. Moreover, the state argues that the defendant waived any alleged attorney-client privilege by sharing the document with third parties. The state additionally argues that the holding in *Lenarz* is not applicable here because, unlike the materials at issue in *Lenarz*, there is no indication in the five page document that the defendant intended it to be confidential or that he prepared it for the purpose of seeking legal advice.

"[C]ommunications between client and attorney are privileged when made in confidence for the purpose of seeking legal advice. . . . By contrast, statements made in the presence of a third party are usually not privileged because there is no reasonable expectation of confidentiality. . . . The only recognized exceptions to this rule are when the third party was an interpreter, clerk or agent of the client's attorney . . . ." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State v. Christian*, 267 Conn. 710, 749, 841 A.2d 1158 (2004). Although the defendant claims that the record contains the relevant facts necessary to determine whether the attorney-client privilege was applicable to the five page document, the trial court in the present case never made any findings regarding the purpose for which the document was created or

whether the defendant intended that it remain a confidential document. Before the court had the opportunity to rule whether the marital communications privilege had been waived because of the document's disclosure to third parties, defense counsel withdrew the claim of privilege. Accordingly, we agree with the state that the record is inadequate for us to review the defendant's claim under *Golding*.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] Furthermore, we note that the document in this case is totally unlike the materials in *Lenarz*. In *Lenarz*, there is a notation on the document that the information is "confidential," the document indicates that the recipient "would have success in defending" the case by using the information, and the document titled "[s]trategy issues" was directed to be used for the upcoming "court appearance . . . ." (Internal quotation marks omitted.) *State* v. *Lenarz*, supra, 301 Conn. 441–42. Moreover, the prosecutor in *Lenarz* expressly had been put on notice that there were materials in the defendant's computer that were subject to the attorney-client privilege, and the court had ordered the prosecutor not to read them. Id., 442. The factual and procedural situation in *Lenarz* differs significantly from the circumstances in the present case. Contrary to the defendant's argument, *Lenarz* is not applicable to this case.