******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* DONALD H. G.[1]
(AC 34392)

Alvord, Bear and Schaller, Js.

*Argued December 5, 2013—officially released February 25, 2014*

(Appeal from Superior Court, judicial district of Ansonia-Milford, Keegan, J.)

*W. Theodore Koch III*, assigned counsel, for the appellant (defendant).

*Jennifer F. Miller*, special deputy assistant state's attorney, with whom, on the brief, were *Kevin D. Lawlor*, state's attorney, and *Charles M. Stango*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Donald H. G., appeals from the judgment of conviction, rendered by the trial court following a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A), and three counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[2] On appeal, the defendant claims: (1) the court erred in allowing the state to introduce evidence of uncharged misconduct, (2) the court erred when it refused to conduct an in camera review of the victim's psychological records, (3) the court's improper response to a question posed by the jury during its deliberations deprived him of a fair trial, and (4) the prosecutor committed prejudicial impropriety during closing and rebuttal argument. We affirm the judgment of the trial court.

The following facts, which reasonably could have been found by the jury, are relevant to the defendant's appeal. The minor victim, who was born in October, 1992, is the niece of the defendant. In the time period between May and October, 2003, when the victim was age ten or eleven, she, along with her sister and her friend, went to the defendant's workplace to help him paint the interior of the building. The victim went upstairs to paint the office while her sister and her friend remained downstairs. The defendant entered the office, where he kissed the victim, pulled down his pants, and asked the victim to perform fellatio on him. The victim complied, while the defendant, who was standing against the wall, guided her head. Before he ejaculated, the defendant warned the victim and told her to swallow it. The victim again complied. The defendant told the victim she was doing "a good job." The defendant then pulled down the victim's shorts and began to perform cunnilingus on her for a couple of minutes, while looking to make sure no one was entering the room. The defendant also penetrated the victim's vagina with his tongue.

The defendant later took the victim's sister and the victim's friend home, but he returned to his workplace with the victim where he continued to sexually assault her by inserting his fingers into her vagina. The defendant told the victim that she was "grown up and mature," and he convinced the victim that the sexual assault was their secret. The defendant also asked the victim if she wanted to go to a movie theatre with him. The victim pretended to telephone her mother because she did not want to go with the defendant, and she told the defendant that her mother said she could not go with him. On the basis of these facts, the state charged the defendant with one count of sexual assault in the first degree and two counts of risk of injury to a child.

On or about December 24, 2007, the victim's family had a Christmas party, which the defendant and others attended. During the party, the victim went into the garage, which had an upstairs room with a bar, pool table, television and bathroom, to get a beverage, during which time she encountered the defendant. When the defendant walked by the victim, he slapped her buttocks. "[F]lustered and annoyed," the victim retreated to her bedroom, where the defendant appeared shortly thereafter. The defendant, who had been drinking but did not appear intoxicated, asked the victim to kiss him or to perform fellatio on him. The victim declined, but the defendant began to rub her back and squeeze her buttocks. The defendant also tried to convince the victim to go for a ride with him, but she refused and returned to the party. On the basis of these facts, the state charged the defendant with one count of sexual assault in the third degree and one count of risk of injury to a child.

On or about December 24, 2008, the victim's family again was hosting a Christmas party, which the defendant and others attended. During the party, the victim was watching television in the room above the garage, when the defendant, who appeared to be intoxicated, entered the room and asked the victim to make him a cocktail. As she made the cocktail, the defendant kept trying to get close to the victim, but she kept moving away. The victim was scared and just wanted the defendant to let her go. When she tried to exit the room, the defendant, whom the victim described as a "really big guy [who is] strong," pinned her against the wall and began to run his hands down her body, kissing her and grabbing her chest, while holding both of her hands with one of his hands. The victim also testified that the defendant digitally penetrated her vagina during this assault. The victim was afraid, especially because of the defendant's size and the fact that she "was a scrawny kid . . . ." She "just—I wanted help . . . [and] didn't want this to happen anymore." On the basis of these facts, hereinafter referred to as the "2008 Christmas party incident," the state charged the defendant with one count of sexual assault in the first degree.

On July 2, 2009, the victim, while staying with a friend's family due to a deterioration in her relationship with her family, confided in her friend's mother that the defendant repeatedly had sexually abused her. A few days later, the friend's mother drove the victim to the police station to report the sexual abuse. The victim made further disclosures to the police on August 27, 2009, and September 5, 2009.

The defendant was arrested and charged, by way of an amended information, with two counts of sexual assault in the first degree, one count of sexual assault in the third degree, and three counts of risk of injury to a child. The jury found the defendant guilty of all

charges with the exception of the count of sexual assault in the first degree that stemmed from the 2008 Christmas party incident, for which the jury returned a verdict of not guilty. The court accepted the jury's verdict, rendered judgment of conviction on five counts, and imposed a total effective sentence of thirty years incarceration, ten years of which were mandatory, followed by five years of parole with special conditions, and lifetime registration as a sexual offender. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that the court abused its discretion in permitting the state to introduce uncharged misconduct evidence. He argues that he was charged with crimes related to three incidents involving the victim, but the court permitted the state to introduce evidence relating to a total of six incidents involving the victim, three of which pertained to misconduct for which he never was charged. He contends that the probative value of this evidence was far outweighed by its prejudicial effect.[3] The state argues that the court properly balanced the probative value against its prejudicial effect and did not abuse its discretion in concluding that the evidence was admissible. We agree with the state.

The following additional facts are relevant to this issue. On August 15, 2011, the state filed a motion requesting that it be permitted to introduce two incidents of uncharged misconduct involving the defendant and the victim. In the motion, the state alleged that the first incident involved an allegation that the defendant, in October, 2002, had the then nine or ten year old victim perform fellatio on him while they were under a wooden dock in Essex. The state alleged that the second incident occurred between 2007 and 2009 in Vermont and involved the defendant having forced sexual intercourse with the victim. The state then amended its request and sought to introduce evidence of additional incidents of uncharged misconduct, which it alleged occurred at various unnamed times and places but were instances wherein the defendant forced the victim to perform fellatio on him. The state alleged that these instances were so frequent that they blended together in the mind of the victim, but that there was a common link between them because the defendant always ejaculated and always instructed the victim to swallow the ejaculate. The defendant objected to the introduction of any prior incidents of uncharged misconduct.

Following a hearing, the court, citing *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008), superseded in part after reconsideration by *State* v. *Sanseverino*, 291 Conn. 574, 579, 969 A.2d 710 (2009), *State* v. *James*, 211 Conn. 555, 560 A.2d 426 (1989), and *State* v. *Linarte*, 107 Conn. App. 93, 944 A.2d 369, cert. denied, 289 Conn. 901, 957

A.2d 873 (2008), granted the state's request to introduce the evidence of uncharged misconduct, concluding that the evidence was not too remote in time, that it put the sequence of events into perspective, that it was relevant to motive and intent, and that it demonstrated the defendant's "lustful inclination" toward the victim. The court cautioned the state, however, from making a "gratuitous recitation" of the uncharged incidents in order to minimize the prejudicial nature of the evidence. Prior to the testimony from the victim, the court also thoroughly instructed the jury that the evidence of uncharged events was admitted only for the limited purpose of demonstrating the defendant's motive and intent to commit the charged crimes. The court also explained to the jury that the victim would testify about the events in chronological order, with the uncharged misconduct being the first events about which she would testify because they occurred before the charged misconduct.

"As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . On the other hand, evidence of crimes so connected with the principal crime by circumstance, motive, design, or innate peculiarity, that the commission of the collateral crime tends directly to prove the commission of the principal crime, is admissible. The rules of policy have no application whatever to evidence of any crime which directly tends to prove that the accused is guilty of the specific offense for which he is on trial. . . . [Our Supreme Court has] developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions [set forth in § 4-5 (b) of the Connecticut Code of Evidence]. . . . Second, the probative value of the evidence must outweigh its prejudicial effect. . . . Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only whe[n] abuse of discretion is manifest or whe[n] an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Footnote omitted; internal quotation marks omitted.) *State* v. *Franko*, 142 Conn. App. 451, 459–60, 64 A.3d 807, cert. denied, 310 Conn. 901, 75 A.3d 30 (2013).

In cases of sexual misconduct, however, our Supreme Court has "adopted an exception to § 4-5 (a) of the Connecticut Code of Evidence . . . allowing the admission of prior misconduct evidence to establish propensity in sex related cases if certain conditions are met. . . . Specifically, [it] concluded in [*State* v. *DeJesus*, supra, 288 Conn. 470–74] that evidence of uncharged sexual misconduct is admissible only if it is relevant to prove that [a] defendant had a propensity or a tendency to engage in the type of aberrant and compulsive criminal sexual behavior with which he or

she [was] charged. Relevancy is established by satis-fying the liberal standard pursuant to which [prior sex crimes] evidence previously was admitted under the common scheme or plan exception. Accordingly, evi-dence of uncharged misconduct [or other crimes] is relevant to prove that [a] defendant had a propensity or a tendency to engage in the crime charged only if it is: (1) . . . not too remote in time; (2) . . . similar to the offense charged; and (3) . . . committed [against] persons similar to the prosecuting witness.

"[Such] [e]vidence . . . is admissible only if its pro-bative value outweighs the prejudicial effect that invari-ably flows from its admission. . . . In balancing the probative value of such evidence against its prejudicial effect, however, trial courts must be mindful of the purpose for which the evidence is to be admitted, namely, to permit the jury to consider a defendant's prior bad acts in the area of sexual abuse or child molestation for the purpose of showing propensity.[4] . . . *State* v. *Gupta*, 297 Conn. 211, 224, 998 A.2d 1085 (2010); see also *State* v. *DeJesus*, supra, 288 Conn. 474 (to minimize the risk of undue prejudice to the defen-dant, the admission of evidence of uncharged sexual misconduct under the limited propensity exception adopted herein must be accompanied by an appropriate cautionary instruction to the jury).

"The admission of evidence of . . . uncharged mis-conduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . [T]he burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant . . . [who] must show that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *George A.*, 308 Conn. 274, 293–95, 63 A.3d 918 (2013).

The defendant argues in part that the more liberal propensity standard for admission of uncharged sexual misconduct is not applicable in this case because the court allowed the evidence "on the grounds of intent and motive, not propensity." The state agrees but also points out that the defendant in his appellate brief does not contest the admissibility of the evidence on the grounds of motive and intent, but only "challenges the trial court's finding that the prejudicial effect of the uncharged misconduct evidence outweighed its proba-tive value." The state further contends that "[b]ecause the defendant is not attacking the trial court's finding that the evidence was admissible on motive and intent grounds, the state need not provide alternative grounds for affirmance . . . ." After reviewing the defendant's brief and his claims on appeal, we agree that he does

not contest the admissibility of the evidence on the grounds of motive and intent, but challenges only the court's ruling that the probative value of the evidence outweighed its prejudicial effect. We further conclude that he has failed to demonstrate that the court's ruling was an abuse of discretion.[5]

The defendant argues that the uncharged sexual misconduct evidence in this case should have been excluded because it was more prejudicial than probative. We disagree. "Although evidence of child sex abuse is undoubtedly harmful to the defendant, that is not the test of whether evidence is unduly prejudicial. Rather, evidence is excluded as unduly prejudicial when it tends to have some adverse effect upon a defendant *beyond tending to prove the fact or issue that justified its admission into evidence.* . . . As explained in *DeJesus*, because of the unusually aberrant and pathological nature of the crime of child molestation, prior acts of similar misconduct, as opposed to other types of misconduct, are deemed to be highly probative because they tend to establish a necessary motive or explanation for an otherwise inexplicably horrible crime . . . and assist the jury in assessing the probability that a defendant has been falsely accused of such shocking behavior." (Emphasis in original; internal quotation marks omitted.) *State* v. *Allen*, 140 Conn. App. 423, 440, 59 A.3d 351, cert. denied, 308 Conn. 934, 66 A.3d 497 (2013).

Uncharged misconduct evidence may be introduced to show such things as motive, common scheme, pattern, or design. *State* v. *Barry A.*, 145 Conn. App. 582, 594, 76 A.3d 211, cert. denied, 310 Conn. 936, 79 A.3d 889 (2013). Additionally, "evidence of prior sexual misconduct with the same victim is commonly admitted to show a lustful inclination toward the victim." (Internal quotation marks omitted.) *State* v. *Andersen*, 132 Conn. App. 125, 135, 31 A.3d 385 (2011), cert. denied, 305 Conn. 906, 44 A.3d 182 (2012); see *State* v. *James*, supra, 211 Conn. 578 ("[e]vidence of prior sexual misconduct with the complainant in a sexual assault case has commonly been admitted to show a lustful inclination toward the victim").

In this case, the court found that the uncharged sexual misconduct evidence was probative of the defendant's intent and his motive for committing the acts of sexual abuse against the victim, namely, his lustful inclinations toward this specific victim. As explained in *Barry A.*, admitting uncharged sexual misconduct evidence for the purpose of establishing motive in a sexual abuse case is probative because it would tend "to establish an explanation for this 'inexplicably horrible crime'; *State* v. *Allen*, supra, 140 Conn. App. 440; and would help the jury determine whether the allegations of sexual assault were true." *State* v. *Barry A.*, supra, 145 Conn. App. 594–95.

As to the defendant's claim that the court abused its

discretion because the evidence in this case was unfairly prejudicial, we disagree and conclude that it readily can be inferred from the record that the court analyzed the relevant factors and performed the requisite balancing test before permitting the introduction of the uncharged sexual misconduct evidence. See *State* v. *Nunes*, 260 Conn. 649, 690, 800 A.2d 1160 (2002) (before concluding that trial court performed necessary balancing test, "reviewing court must be able to infer from the entire record that the trial court considered the prejudicial effect of the evidence against its probative nature before making a ruling"). The parties submitted motions and memoranda on the issue, and the court heard thorough oral argument from counsel. Two days later, the court issued its oral ruling, specifically stating that "in order for uncharged misconduct . . . to be admissible, it has to be relevant and material to one of the exceptions to the general rule, and it must be more probative than prejudicial." The court then considered the relevance and materiality of each instance and determined that they were more probative than prejudicial.

Additionally, the court also assured counsel that it would give cautionary instructions to the jury. Our review of the trial transcripts reveals that the court in fact gave repeated cautionary instructions to the jury on the limited use of the prior sexual misconduct evidence. Such instructions serve to minimize the risk of undue prejudice to the defendant. See *State* v. *Barry A.*, supra, 145 Conn. App. 596 (court's limiting instruction on use of uncharged sexual misconduct evidence for intent or motive is more favorable and less prejudicial to defendant than propensity instruction under *DeJesus*). Accordingly, on the basis of the record before us, we are unable to conclude that the court abused its broad discretion in admitting the prior uncharged sexual misconduct evidence involving the victim.

II

The defendant next claims that the court erred when it refused to conduct an in camera review of the victim's psychological records. The defendant argues that this evidence was critical because "[i]t would have shown how [the victim] was *actually being untruthful* about that most vivid (and gratuitous) incident, [Vermont]." (Emphasis in original.) The state argues that the court did not abuse its discretion because the defendant based his request on overbroad and vague statements that the records might contain relevant information, and because he failed to make the threshold showing that the victim had a mental condition that would affect her ability to recall and relate events correctly. We agree with the state.

The defendant filed a request that the court conduct an in camera review of the victim's psychological records on several grounds, including (1) the victim

had remembered more incidents of abuse at the hands of the defendant during counseling than she had remembered when she initially disclosed the abuse, (2) the victim had told her counselor that she had lost her virginity to the defendant while in Vermont, but she testified that the defendant had never had vaginal intercourse with her and that she had never told anyone that the defendant had engaged in vaginal intercourse with her,[6] and (3) the information "could reveal information of an exculpatory nature, including, but not limited to, statements made by her about the crimes alleged in this case which would serve to impeach her credibility." The state argued that there was no evidence that the victim suffered from any type of mental illness that would warrant an in camera review of the victim's confidential counseling records.

Following argument, the court denied the defendant's request for an in camera review of the victim's psychological records, holding that the defendant had thoroughly cross-examined the victim as to any possible inconsistencies between her statements and her in-court testimony, and that the defendant had failed to make "the showing that the records contain[ed] information on the witness' ability to perceive, recall, or relate events or her testimonial capacity."

"This court will review a trial court's denial of a defendant's request to conduct an in camera review of confidential records pursuant to our standard of review for evidentiary rulings. . . . Therefore, [w]e review a court's conclusion that a defendant has failed to make a threshold showing of entitlement to an in camera review of statutorily protected records . . . under the abuse of discretion standard. . . . We must make every reasonable presumption in favor of the trial court's action. . . . The trial court's exercise of its discretion will be reversed only where the abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Campanaro*, 146 Conn. App. 722, 732, 78 A.3d 267 (2013), cert. denied, 311 Conn. 902, A.3d (2014).

"It is well settled in this state that before a criminal defendant may obtain an in camera inspection of a witness' confidential records for purposes of impeachment, he or she must first demonstrate that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken. . . .

"[T]he linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality and disclosing them to the defendant in order to protect his right of confrontation. . . . Where . . . the witness'

records are sought for the purpose of obtaining evidence of a mental condition bearing on the witness' testimonial capacity, we require the defendant, who is afforded an opportunity to voir dire persons with knowledge of the contents of the records sought, to adduce a factual basis from which the trial court may conclude that there is a reasonable ground to believe that the records will reveal that at any pertinent time [the witness' mental problem] affected his testimonial capacity to a sufficient degree to warrant further inquiry." (Citations omitted; internal quotation marks omitted.) *State* v. *Hickey*, 135 Conn. App. 532, 557–58, 43 A.3d 701, cert. denied, 306 Conn. 901, 52 A.3d 728 (2012).

We conclude that the trial court did not abuse its discretion in denying the defendant's request for an in camera review of the victim's psychological records. First, the defendant's request was vague and speculative. "[T]he right to cross-examine witnesses does not include the power to *require* the pretrial disclosure of any and all information that *might* be useful in contradicting unfavorable testimony. . . . The general assertion that such information, if found, could be useful or helpful to his defense was nothing more than a general fishing expedition into protected and confidential records. A showing to warrant an in camera review requires more than mere speculation." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Campanaro*, supra, 146 Conn. App. 733. Additionally, we agree with the court that the defendant failed to make a threshold showing that the victim had a mental condition affecting her "ability to perceive, recall, or relate events or her testimonial capacity." Accordingly, we conclude that the court did not abuse its discretion in refusing to conduct an in camera review of these records.

### III

The defendant also claims that the court's improper response to a question posed by the jury during its deliberations deprived him of a fair trial.[7] He argues that the court's supplemental instruction to the jury in response to a note it sent regarding the appropriate use of three exhibits that were marked for identification only failed to clarify that although the exhibits were not evidence, the testimony surrounding them was evidence. Specifically, the defendant argues: "When the jury wanted to examine [the victim's] statements and [Detective Steven] Young's notes, the court instructed them that 'they are not part of the body of evidence from which you can decide what the facts of this case are.' . . . Although the court also stated that the live testimony was for the jury's consideration, this does not go far enough. When lay people are told what they can *not* consider, they must also be told specifically what they *can* consider . . . ." (Citation omitted; emphasis in original.) The state argues that the claim

is without merit because the "court's supplemental instruction, viewed in concert with its original instruction, properly apprised the jury that such exhibits were not evidence, but that the jury could consider the testimony of the witnesses from the [witness] stand, as well as the photographs and other exhibits that had been marked as full." We agree with the state.

The following additional facts are relevant. During deliberations, the jury sent a written request to the court asking to view the two police reports signed by the victim and Detective Young's handwritten report. These documents, however, had not been introduced as full exhibits during trial. After receiving the request, the court, out of the presence of the jury, engaged in the following colloquy with counsel:

"The Court: Okay. All right. We have two notes, ladies and gentlemen. The first note says we would like to request the two signed police statements of [the victim] and the report of Detective Young; that is marked court exhibit 4. Court exhibit 5 is, we would like Detective Young's handwritten notes. So, of course, as the parties are well aware, it is not evidence in the case. None of these documents are; so, that's what I'm going to instruct them. I'm going to remind them that evidence in the case is the testimony and the exhibits that are before them, and that is the body of evidence from which they have to decide the facts of the case. . . .

"[The Prosecutor]: That's generally, is, unless Your Honor adds the reports and the notes were referred only in an attempt to bring out inconsistent statements with regard for the limiting purpose; that's what that's for. If not, the fact that they're not evidence probably suffices. The evidence comes from the [witness] stand.

"The Court: All right.

"[Defense Counsel]: I don't think Your Honor should say they were only used for that. I think Your Honor should just say they're not evidence. You know, it's just the testimony that was presented, period.

"The Court: Okay. Bring them out."

The jury then was brought back into the courtroom, where the court offered the following supplemental instruction:

"The Court: All right. Very good. All right. Ladies and gentlemen, I'm in receipt of your notes; they've been marked as court exhibits 4 and 5. I am going to read them into the record.

"We would like to request the two signed police statements of [the victim] and the report of Detective Young.

"And then the second note, court exhibit 5, says we would like Detective Young's handwritten notes.

"Well, these documents are not evidence in this case. They were not entered as exhibits in evidence, and so

they are not part of the body of evidence from which you can decide what the facts of this case are. The evidence that you have before you is the testimony of the witnesses from this [witness] stand and the photographs and other exhibits that had been marked as full exhibits; no [identification] exhibits, all right.

"So, with that, I will excuse you to return to your deliberations and you're all set."

After the jury exited the courtroom, the following colloquy took place:

"[Defense Counsel]: May I just say something, Your Honor?

"The Court: Yes, sir.

"[Defense Counsel]: Just with respect to Your Honor's instructions, I think Your Honor's instruction they can't get—things weren't marked as exhibits, so, you're correct. But I think they might be confused if you say they can't consider those items as evidence. It's the testimony with respect to those items you can consider.

"The Court: I said the testimony that came from this [witness] stand.

"[Defense Counsel]: With the [witness] stand, right.

"The Court: Yes.

"[Defense Counsel]: Okay.

"The Court: I don't—I'm not understanding what your concern is.

"[Defense Counsel]: I guess my point was, if I'm sitting there and you say that they can't consider those things as evidence in the case, they can consider the testimony with respect to them as evidence, but not—

"The Court: Playback for me what I said.

"[Defense Counsel]: Thanks. Maybe I'm wrong."

The court reporter then played back the court's supplemental instruction, and the discussion continued.

"The Court: Okay. So, what I said is, these documents are not evidence.

"[Defense Counsel]: Right.

"The Court: I don't know. Unless you—

"[Defense Counsel]: That's correct.

"The Court: Upon rehearing it, unless you think there is something I need to clarify. The court is not of the opinion that it indicated that the information from the testimony that related to these documents was not evidence. I said these documents are not evidence. . . .

"[Defense Counsel]: Yeah. I heard you say these documents are not evidence. I just think that—by them hearing that they may think that anything on those documents can't be used as evidence that was [brought]

out in the testimony. My suggestion would be to just say, look, you can consider whatever evidence through testimony was presented regarding that, but we can't admit the—you know the [identification] exhibits.

"The Court: Why do you want me to highlight something that was not in the jurors' notes? It was, can we have these things? No, these documents are not evidence. The evidence is the testimony and the exhibits.

"[The Prosecutor]: Thank you, Your Honor.

"The Court: I decline to reinstruct in that way.

"[Defense Counsel]: Thank you, Your Honor."

Our analysis of the defendant's claim begins with the applicable standard of review for a claim of instructional error. "[I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury. . . . Additionally, [w]hile a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a court need not tailor its charge to the precise letter of such a request. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . For nonconstitutional claims, if a jury instruction is determined to have been improper, it is grounds for reversal only if it is reasonably probable that the jury was misled." (Citations omitted; internal quotation marks omitted.) *State* v. *Myers*, 126 Conn. App. 239, 254–55, 11 A.3d 1100, cert. denied, 300 Conn. 923, 14 A.3d 1006 (2011).

The defendant argues that the court's supplemental instruction to the jury was improper because the court failed to clarify that although the exhibits marked for identification only were not evidence, the testimony surrounding them was evidence. In this case, despite the defendant's argument to the contrary, the court properly instructed the jury in response to its very specific questions. Furthermore, the court did reiterate to the jury during its supplemental instruction that the testimony of the witnesses was evidence. Specifically, it stated: "Well, these documents are not evidence in this case. They were not entered as exhibits in evidence, and so they are not part of the body of evidence from which you can decide what the facts of this case are. *The evidence that you have before you is the testimony of the witnesses from this* [*witness*] *stand and the photographs and other exhibits that had been marked*

*as full exhibits*; no [identification] exhibits, all right."
(Emphasis added.) This persuades us that the court
properly instructed the jury on this matter and there
is no reasonable probability that the jury was misled,
especially when viewed in combination with the court's
main instructions to the jury, which included the
instruction: "The evidence from which you are to decide
what the facts are consists of: (1) the sworn testimony
of witnesses both on direct and cross examination,
regardless of who called the witness; and (2) the exhib-
its that have been admitted into evidence."

IV

The defendant's final claim is that the prosecutor
committed two instances of prejudicial impropriety,
one during closing argument and one during rebuttal.
Specifically, the defendant argues: "The first instance
occurred in the conclusion of the first part of his closing
argument, when [the prosecutor] said, 'I would ask . . .
that you convict [the defendant] of doing the things
that *we know he did*; sexually assaulting that young
lady whenever he could for seven years.' . . . The sec-
ond instance occurred during rebuttal, when [the prose-
cutor] argued, 'I said we need Ms. [Lisa] Melillo, [the
state's expert witness], who *I know is an authority* on
the general characteristics of behavior . . . .' "[8] (Cita-
tion omitted; emphasis in original.) We are not per-
suaded that the remarks were improper.

"[T]he touchstone of due process analysis in cases
of alleged prosecutorial [impropriety] is the fairness of
the trial, and not the culpability of the prosecutor. . . .
The issue is whether the prosecutor's conduct so
infected the trial with unfairness as to make the
resulting conviction a denial of due process. . . . [T]he
burden is on the defendant to show, not only that the
remarks were improper, but also that, considered in
light of the whole trial, the improprieties were so egre-
gious that they amounted to a denial of due process.
. . .

"[I]n analyzing claims of prosecutorial [impropriety],
we engage in a two step analytical process. The two
steps are separate and distinct: (1) whether [impropri-
ety] occurred in the first instance; and (2) whether that
[impropriety] deprived a defendant of his due process
right to a fair trial." (Citations omitted; internal quota-
tion marks omitted.) *State* v. *Barry A.*, supra, 145 Conn.
App. 598. As "recently clarified in *State* v. *Payne*, 303
Conn. 538, 562–63, 34 A.3d 370 (2012), 'when a defen-
dant raises on appeal a claim that improper remarks
by the prosecutor deprived the defendant of his consti-
tutional right to a fair trial, the burden is on the defen-
dant to show . . . that the remarks were improper
. . . .' " *State* v. *Otto*, 305 Conn. 51, 77, 43 A.3d 629
(2012).

In the present case, the defendant argues that the

prosecutor committed impropriety by asking the jury to convict the defendant "of doing the things that we know he did" and by telling the jury that "he knows" that the state's expert is an authority. The first step in our analysis is to determine if the defendant met his burden "to show . . . that the remarks were improper . . . ." *State* v. *Payne*, supra, 303 Conn. 563. We conclude that the defendant has failed to meet his burden.

The state argues that the defendant's "claims should be rejected. As a preliminary matter, the defendant cites no legal authority to support his contention that either of these comments was improper." We agree. The entirety of the defendant's analysis in his appellate brief on whether the prosecutor's two remarks were improper under prong one is set forth as follows: "In a trial so full of uncharged misconduct, with charges as inherently prejudicial as these, where the state's case is by definition not strong, when a prosecutor argues that the jury ought to convict the defendant of what *we know he did*, there is no known cure for the prejudice. This argument . . . lowers the state's burden, personally vouches for the credibility of the state's entire case, and invades the jury's neutral province.

"When the prosecutor tells the jury that *he knows* that his expert witness is an authority, even when he steps back from his passion to acknowledge the court's admonition, it does not matter. The state has already spoken; the jury knows how its representative feels."[9] (Emphasis in original.)

The foregoing is the entire argument and analysis set forth by the defendant in his effort to meet his burden to show that the prosecutor's remarks were improper. Although he argues that the first claimed instance of impropriety "lowers the state's burden, personally vouches for the credibility of the state's entire case, and invades the jury's neutral province," he does not address *how* the remark does this. Further, he does not explain under what theory the second remark is improper. He sets forth no case law, no other supporting authority and no substantive analysis on his claim that the remarks were improper. Nevertheless, we have reviewed the remarks in the context in which they were made, and we are not persuaded that they were improper.

"[A] prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely

to infer that such matters precipitated the personal opinions. . . . It is not, however, improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Luster*, 279 Conn. 414, 435, 902 A.2d 636 (2006).

In his closing statement, the prosecutor reviewed the evidence as to each of the charged crimes, thoroughly summarized the case to the jury and, as his final remark, asked the jury to convict the defendant, stating: "I would ask at the conclusion of the arguments and at the conclusion of the Judge's charge that you convict [the defendant] of doing the things that we know he did; sexually assaulting that young lady whenever he could for seven years." We conclude that in this first instance of claimed impropriety, the prosecutor inartfully asked the jury to come to the reasonable conclusion, on the basis of the evidence presented, that the defendant was guilty of the crimes charged. See, e.g., *State* v. *Boyd*, 89 Conn. App. 1, 42, 872 A.2d 477, cert. denied, 275 Conn. 921, 883 A.2d 1247 (2005), overruled in part on other grounds by *State* v. *Kemah*, 289 Conn. 411, 432, 957 A.2d 852 (2008).

We further conclude that the second instance, which occurred during rebuttal argument, also was not improper when considered in context. See *State* v. *Jones*, 135 Conn. App. 788, 802–805, 44 A.3d 848 (reviewing claim of prosecutorial impropriety during rebuttal argument as matter of law and holding that, despite trial court's conclusion that argument was improper, argument was properly made in response to defense counsel's closing argument), cert. denied, 305 Conn. 925, 47 A.3d 885 (2012); see generally *State* v. *King*, 289 Conn. 496, 510–12, 510 n.11, 958 A.2d 731 (2008) (despite trial court's sustaining of defendant's objection, prosecutor's questions were not improper). During the defense portion of closing argument, defense counsel told the jury: "Let me just touch on Lisa Melillo just for a second. She comes to testify. Two weeks ago she's told they need her testimony, and they want her to explain about delayed disclosures and why it may happen. So, she gives her opinion of why it may happen. And not every case is the same. Guess what, I have never talked to [the victim]; I don't know anything about this case. You know more than she does. You know much more than she does. I've never talked to her, never reviewed any records. I asked her this stuff you're telling us about, isn't it true that it's not a diagnostic tool or it can't be used diagnostically? In other words, if this happens, it means sexual abuse takes place. She was very, very clear on that. She goes absolutely. It's not a diagnostic tool.

"Don't be led to believe that because she says, hey, there are reasons for delayed disclosure in some cases

you know that it's a diagnostic tool; it's not. In fact, she said, look, I'm not coming here, you know, telling you what's credible and what's not credible testimony. She can't; she never talked to the lady. She didn't know if she made, you know, prior disclosures that were at odds with her signed sworn statements or prior disclosures that were at odds with her trial court testimony, which is under oath.

"So, she gets called two weeks beforehand; she gets paid. That's her job. She has testified basically for the state; nobody else. So, she has a specific role, and she testifies for the state every time and has never testified for the defense."

During rebuttal argument, the prosecutor addressed defense counsel's statements regarding Melillo: "Then [the defense attorney] wants to minimize Ms. Melillo, whose job it was to present you the general characteristics as to the unusual behavior of sex assault victims. Why did I provide her to you? Because as adults your first inclination is, if anybody tried this with me, first of all, I'd kick him in the you know where, or worse, and I would say something immediately. Kids don't operate like that. It was important that you know that from someone who understands it and does it for a living and encounters it every day. It's something that is atypical to me, and I figured, if I'm the jury—maybe it's atypical to you. You don't do this every day. He made sure you knew that.

"But he also said, not a diagnostic tool; we weren't talk[ing] about the specifics of this case. If I had her stand here and say with specifics of this case, [defense counsel] would have pulled his groin muscle jumping out of the chair to object because she's not allowed to vouch for the credibility of any witness; no one is. Credibility is yours and yours alone, ladies and gentlemen. The determination of who is telling the truth here and when they're telling it is really up to you and really only up to you."

The prosecutor continued, and the following colloquy occurred a short time later: "But it's my obligation to present the case to you where I think it covers the elements beyond a reasonable doubt. I said we need Ms. Melillo, who I know to be an authority on the general characteristics of behavior—

"[Defense Counsel]: Objection.

"The Court: All right. Sustained as to your personal— it's not relevant. She testified for you as an expert. I'll give you instructions on that. And remember, this is argument, so it's not evidence.

"[The Prosecutor]: Fair enough. I apologize. Who is someone who has expertise in the area. I presented her to you to see if her expertise helped explain seemingly unexplainable behavior on the part of this young lady."

We conclude that the prosecutor's comment, taken in context, was not improper. Defense counsel had attempted to call into question the credibility and usefulness of the testimony of Melillo, the state's expert witness. During rebuttal, the prosecutor addressed the argument of defense counsel and explained the purpose of the expert testimony. Although the prosecutor may have used a poor choice of words when he said, "who I know to be an authority," such a single lapse in responding to the forceful closing argument of defense counsel cannot be said to be improper. See generally *State* v. *Luster*, supra, 279 Conn. 436 ("if it is clear that the prosecutor is arguing from the evidence presented at trial, instead of giving improper unsworn testimony with the suggestion of secret knowledge, his or her occasional use of the first person does not constitute misconduct").

Here, the prosecutor's use of "who I know to be an authority" was not an expression of personal opinion or of insider knowledge, but, rather, was an attempt to explain that the state's expert had specialized knowledge in the field of delayed disclosure and that her testimony was useful in this case. See *State* v. *Spigarolo*, 210 Conn. 359, 380, 556 A.2d 112 ("where defense counsel has sought to impeach the credibility of a complaining minor witness in a sexual abuse case, based on inconsistency, incompleteness or recantation of the victim's disclosures pertaining to the alleged incidents, the state may offer expert testimony that seeks to demonstrate or explain in general terms the behavioral characteristics of child abuse victims in disclosing alleged incidents"), cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). Accordingly, we conclude that the remark was not improper.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] The jury returned a verdict of not guilty on a charge of sexual assault in the first degree in violation of § 53a-70 (a) (1).

[3] During appellate oral argument, the defendant argued in part that the trial court should have limited this evidence because three instances of uncharged misconduct against the same victim was too much. He admitted, however, that no such argument was raised before the trial court.

[4] "We note that § 4-5 of the Connecticut Code of Evidence was subsequently amended to conform [to] *State* v. *DeJesus*, supra, 288 Conn. 474. This rule, as amended, provides: (a) General Rule. Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character, propensity, or criminal tendencies of that person except as provided in subsection (b).

"(b) When evidence of other sexual misconduct is admissible to prove propensity. Evidence of other sexual misconduct is admissible in a criminal case to establish that the defendant had a tendency or a propensity to engage in aberrant and compulsive sexual misconduct if: (1) the case involves aberrant and compulsive sexual misconduct; (2) the trial court finds that the evidence is relevant to a charged offense in that the other sexual misconduct is not too remote in time, was allegedly committed upon a person similar to the alleged victim, and was otherwise similar in nature and circum-

stances to the aberrant and compulsive sexual misconduct at issue in the case; and (3) the trial court finds that the probative value of the evidence outweighs its prejudicial effect.

"(c) When evidence of other crimes, wrongs or acts is admissible. Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony.

"(d) Specific instances of conduct when character in issue. In cases in which character or a trait of character of a person in relation to a charge, claim or defense is in issue, proof shall be made by evidence of specific instances of the person's conduct. Conn. Code Evid. § 4-5 (effective January 1, 2012), 73 Conn. L.J. No. 1, pp. 211PB-212PB (July 5, 2011)." (Internal quotation marks omitted.) *State* v. *George A.*, 308 Conn. 274, 294 n.21, 63 A.3d 918 (2013).

[5] We are aware that in *State* v. *Antonaras*, 137 Conn. App. 703, 723–26, 49 A.3d 783, cert. denied, 307 Conn. 936, 56 A.3d 716 (2012), we agreed with the defendant in that case that it was error for the trial court to instruct the jury that it could consider uncharged sexual misconduct as evidence of a common scheme or plan rather than as propensity evidence, as permitted in *DeJesus*. Although we agreed that the instruction was given in error, we concluded that it was harmless. Id. In the present case, the state moved for the admission of the uncharged sexual misconduct evidence on the grounds of intent and motive, and the court granted the motion on those grounds. There is no claim that the court should have considered the admission of the evidence only to establish the defendant's propensity to engage in the charged sexual misconduct.

[6] During the victim's trial testimony, she stated that the defendant had never had vaginal sexual intercourse with her and that she had never told anyone that the defendant had engaged in vaginal sexual intercourse with her. During the testimony of the victim's counselor, however, which took place after the court ruled on the defendant's motion to conduct an in camera review of the victim's psychological records, the defendant's attorney showed the counselor a report written by Detective Steven Young that stated that the counselor had told him that the victim had reported to the counselor that she had lost her virginity to the defendant while they were in Vermont. The counselor, however, testified that she had no direct recollection of saying that to Young and that she had not made a note of such a disclosure in her file. Detective Young later testified that the counselor, in fact, had disclosed this information to him and that he had taken notes. He also testified that when the victim returned to the police station a few days after he had received this information from the counselor, the victim was unable to confirm the information.

[7] Although the defendant asserts that this claim of instructional error is of constitutional magnitude, we are not persuaded. Our Supreme Court has recognized a very limited number of jury instruction claims as being of constitutional magnitude. See *State* v. *Walton*, 227 Conn. 32, 64–65, 630 A.2d 990 (1993) (improper jury instructions regarding elements of crime or burden of proof are of constitutional magnitude); see also *State* v. *Hicks*, 97 Conn. App. 266, 270, 277, 903 A.2d 685 (deficient jury instructions regarding drawing of no adverse inference from defendant's not testifying is of constitutional magnitude), cert. denied, 280 Conn. 930, 909 A.2d 958 (2006). We agree with the state's contention that the defendant's claim of error in this case falls outside of the constitutional realm. See generally *State* v. *Luster*, 279 Conn. 414, 421–22, 902 A.2d 636 (2006) (claimed instructional error regarding consciousness of guilt not of constitutional dimension); *State* v. *Walton*, supra, 65 ("claimed instructional errors regarding general principles of credibility of witnesses are not constitutional in nature"); *State* v. *Zamora*, 62 Conn. App. 801, 805, 772 A.2d 701 (2001) (claimed instructional error regarding out-of-court statements not constitutional in nature).

[8] Although the defendant objected to the second comment (and the court sustained the objection), he did not object to the first comment. A defendant's failure to object to an occurrence of "prosecutorial impropriety, though relevant to our inquiry, is not fatal to review of his claims. . . . This does not mean, however, that the absence of an objection at trial does not play a significant role in the determination of whether the challenged statements were, in fact, improper. . . . To the contrary, we continue to adhere to the well established maxim that defense counsel's failure to object to the prosecutor's argument when it was made suggests that defense coun-

sel did not believe that it was [improper] in light of the record of the case at the time." (Internal quotation marks omitted.) *State* v. *Taft*, 306 Conn. 749, 762, 51 A.3d 988 (2012).

[9] The defendant then proceeds to analyze the *Williams* factors; *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987); in an attempt to demonstrate how he was deprived of his due process right to a fair trial.

---