******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* JUAN J.*
(SC 20406)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Convicted of sexual assault in the first degree, attempt to commit sexual
assault in the first degree and risk of injury to a child in connection
with the alleged sexual abuse of his daughter, P, on two separate occa-
sions, the defendant appealed to this court. Before the defendant's trial,
the state filed a notice of intent to present evidence that the defendant
had inappropriately touched P in a sexual manner multiple times beyond
the two charged instances. The defendant objected to the admission of
such uncharged misconduct evidence, claiming, inter alia, that he was
denying that the alleged sexual abuse ever occurred and that the jury
could consider the uncharged misconduct as evidence of a propensity
on his part to engage in sexual misconduct. The state indicated that it
did not intend to offer the uncharged misconduct evidence as propensity
evidence but intended to offer it under the Connecticut Code of Evidence
(§ 4-5 (c)) for the purposes of proving intent, a common plan or scheme,
and to complete the story of the defendant's pattern of conduct. The
court overruled the defendant's objection, and P testified not only about
the two charged incidents but about numerous other instances in which
the defendant had allegedly touched her inappropriately. P specifically
testified that the defendant had touched her inappropriately more than
ten times and that he touched the inside of her vagina, her butt, and
her breasts. After P testified, the court instructed the jury that P's
testimony regarding these additional instances could be considered only
as proof that the defendant had the intent to engage in the type of sexual
behavior with which he was charged and that such behavior was not a
mistake or an accident. The court also admitted into evidence video
recordings of two forensic interviews of P under the hearsay exception
for statements made in furtherance of medical diagnosis or treatment.
P had stated in those interviews that the defendant's sexual abuse of
her spanned approximately two years and beyond the date on which
the last of the two charged incidents occurred, that the inappropriate
touching had occurred "all the time" and "every other day," and that
the defendant had, among other things, performed oral sex on her and
digitally penetrated her anus. The court did not give the jury a limiting
instruction before or after the jury viewed those video recordings. In
its final instructions to the jury, the trial court indicated that the evidence
of other misconduct was not being admitted to prove bad character or
propensity but was being admitted solely to show the defendant's intent
and the absence of mistake or accident on the part of the defendant. The
trial court also instructed the jury that it could consider the statements
in the video recordings for their content. The prosecutor referred to
the uncharged misconduct evidence in his closing argument to the jury.
On appeal, the defendant claimed, inter alia, that he was entitled to a
new trial because the trial court had abused its discretion in admitting
the uncharged misconduct evidence and that the trial court's error was
harmful. *Held*:

1. This court declined to review the state's unpreserved claim that the
judgment of conviction could be affirmed on the alternative ground
that the uncharged misconduct evidence was admissible as propensity
evidence under the Connecticut Code of Evidence (§ 4-5 (b)): the state
did not offer the uncharged misconduct evidence at trial to demonstrate
propensity, and, because this court did not know how the trial court
would have exercised its discretion if the evidence had been offered to
demonstrate propensity, this court would be usurping the trial court's
discretion as the decision maker if it were to determine that the chal-
lenged uncharged misconduct evidence would have been admissible as
evidence of propensity; moreover, this court could not speculate about
what defense counsel would have argued if the state had offered the
evidence to demonstrate propensity, there was no record from which

to assess whether the trial court would have admitted the evidence or limited its scope, the trial court would have been obligated to issue a different limiting instruction if the evidence had been admitted to show propensity, and this court could not assess whether the jury would have considered the evidence differently or have reached a different verdict, as the trial court instructed the jury several times not to consider the uncharged misconduct as evidence of propensity.

2. The trial court abused its discretion in admitting the uncharged misconduct evidence under § 4-5 (c), as it was not relevant to the issues in the case: the defendant's theory of defense did not raise a disputed issue of intent, as he claimed that the alleged inappropriate touching of P did not happen at all, he never wavered from that defense or posed a different defense, and the jury was not required to find that he had the specific intent to sexually assault P or the specific intent to put her at risk of injury in order to find him guilty of the general intent crimes with which he was charged; moreover, contrary to the state's assertion that the uncharged misconduct evidence allowed the jury to learn that the defendant had a sexual interest in P, on which he acted in sexually abusing P before and after the charged incidents, that evidence tended to show only that the defendant had the propensity to deliberately, consciously or purposefully touch P, and, because the state did not seek to admit the uncharged misconduct evidence to demonstrate propensity, there was no link between this evidence and the defendant's intent.

3. The defendant having demonstrated that the trial court's erroneous admission of the uncharged misconduct evidence was harmful, the judgment of conviction was reversed, and the case was remanded for a new trial: the state's case was not strong, as the only evidence of the defendant's guilt was P's testimony and that of those to whom she spoke, there was no corroborating physical evidence or any witnesses to the alleged sexual assaults, and, thus, the case turned largely on whether the jury believed P; moreover, the uncharged misconduct evidence detailed in P's testimony and the video recordings of the forensic interviews presented a much more shocking case than the state had charged in both the severity and the frequency of abuse, the prosecutor's summation to the jury covered a broader time frame than the span between which the two charged incidents occurred, and the court's jury instruction on the proper use of the challenged evidence could not cure the potential prejudice to the defendant.

Argued December 20, 2021—officially released July 5, 2022

*Procedural History*

Substitute information charging the defendant with two counts of the crime of risk of injury to a child and with one count each of the crimes of sexual assault in the first degree and attempt to commit sexual assault in the first degree, brought to the Superior Court in the judicial district of New Britain and tried to the jury before *Oliver, J.*; thereafter, the court denied the defendant's motion to preclude certain evidence; verdict and judgment of guilty, from which the defendant appealed to this court. *Reversed*; *new trial.*

*Emily C. Kaas*, assigned counsel, with whom were *Michael O. Sheehan*, assigned counsel, and *Kara E. Moreau*, assigned counsel, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Brian W. Preleski*, former state's attorney, and *Brett J. Salafia*, executive assistant state's attorney, for the appellee (state).

*Opinion*

D'AURIA, J. The dispositive issue in this appeal concerns the admission of uncharged misconduct evidence, specifically, prior incidents of sexual abuse, to prove a general intent to commit the incidents of sexual abuse with which the defendant, Juan J., was charged. A jury found the defendant guilty of sexual assault in the first degree, attempt to commit sexual assault in the first degree, and risk of injury to a child.[1] The defendant claims that he is entitled to a new trial because the trial court abused its discretion in admitting irrelevant, uncharged misconduct evidence of alleged prior incidents of sexual abuse by the defendant against the complainant and that this error was harmful.[2] We conclude that, in a general intent crime case, in which the theory of defense is that the conduct did not occur at all, rather than a theory of defense in which the conduct occurred unintentionally, uncharged misconduct is irrelevant and inadmissible to prove intent. We agree with the defendant that the trial court abused its discretion in admitting this uncharged misconduct evidence because it was irrelevant to the issue of intent—the only issue for which the evidence was proffered—and, therefore, inadmissible. This error was harmful, and we therefore order a new trial.

The jury reasonably could have found the following facts. The complainant, P, is the defendant's daughter. P was sixteen years old at the time of trial and testified regarding two specific incidents of inappropriate sexual conduct by the defendant. The first incident, which involved the defendant touching her vagina under her clothing,[3] occurred on January 5, 2015, when she was twelve years old. The second incident, which involved the defendant attempting, but failing, to touch her vagina under her clothing,[4] occurred less than one year later on December 24, 2015, when she was thirteen years old.

P did not disclose the defendant's inappropriate contact with her until late May or early June, 2016. P's older cousin, A, had taken P dress shopping because P's mother, S, had told A that P had been "having some issues with her attitude [and] trouble in school . . . ." A testified that she had asked P "what was going on with mom, what was going on with dad, and, once I mentioned dad, she was crying hysterically. She said that we didn't know what he was doing to her." A took P back home and told S "that something was up with dad." The next day, after P went to school, A told S that P and her siblings "could no longer be in the house" and should come stay with her. S allowed P, but not her other children, to live with A, who, at the time of the defendant's criminal trial, had legal guardianship of P. One week later, P met with her school counselor because she had gotten into a fight at school. When asked whom she would like the school to contact about

bringing her home, P explained that she wanted to go home with A and not her mother. P disclosed that she was living with A "because something had happened with her father . . . ." The counselor discussed with P some examples of why children may be having a hard time at home, including financial issues, parents having issues, not getting along with siblings and, sometimes, that children are being touched inappropriately. Seemingly surprised at the mention of inappropriate touching, P responded by asking, "how did you know?" The counselor then asked P, "was it your father," and P said yes. P did not share any further details with the counselor other than that the defendant had touched her from "summer, 2015, until three weeks" before that day's meeting.

The counselor, a mandated reporter, reported the allegations to the Department of Children and Families (department). The department opened an investigation and informed the local police, whereupon a criminal investigation also was opened. The department referred P to the Greater Hartford Family Advocacy Center at Saint Francis Hospital and Medical Center in Hartford for a forensic interview that was conducted on June 6, 2016, by Lisa Murphy-Cipolla, the clinical services coordinator. A follow-up forensic interview was conducted several months later after A found P's journal, which "contained what [A] believe[d] [to be] facts related to the case." During both interviews, a detective and a department worker observed the interview from behind a one-way mirror.

At the first interview, P told Murphy-Cipolla that the defendant had touched her from the summer of 2014, to May, 2016. Murphy-Cipolla showed P anatomical diagrams of the male and female human bodies and asked her to show where she had been touched by the defendant and with what. P circled the vagina and buttocks on the female diagram and the hands on the male diagram.

At the second interview, P made more detailed disclosures to Murphy-Cipolla. P informed Murphy-Cipolla that the touching had started in 2014 but, at another point during the interview, alleged that the touching had begun in 2015. P said that the touching stopped in May, 2016, and had occurred "all the time" and "every other day." P also said that the defendant performed oral sex on her, put his mouth on her breasts, and digitally penetrated her anus.

At the end of both interviews, Murphy-Cipolla referred P for a medical examination. Neither examination revealed any physical evidence of sexual assault. Subsequently, the police arrested the defendant.

The following additional procedural history is relevant to our consideration of the defendant's claim. The state's substitute long form information contained four counts.[5] The first two counts—sexual assault in the first

degree and risk of injury to a child—refer specifically to the January 5, 2015 incident; the second two counts—attempt to commit sexual assault in the first degree and risk of injury to a child—refer specifically to the December 24, 2015 incident.

Prior to trial, the state filed a notice of intent to "present testimony and evidence" of prior uncharged misconduct, specifically, evidence that the defendant had inappropriately touched P in a sexual manner multiple times beyond the two particular incidents alleged. The defendant filed a broadly worded motion in limine, objecting to the admission of any evidence of prior uncharged misconduct. Specifically, the defendant argued in the motion that he "denies any of the conduct that is alleged in this case" and that the evidence invites improper propensity considerations. On the first day of trial, the court conducted a hearing on the defendant's motion in limine. Outside the jury's presence, the state proffered the testimony of P that the defendant had touched her inappropriately "[m]ultiple times, like, more than twice," and "a lot of times . . . ." When asked by the prosecutor, P also agreed that the touching occurred "more than ten times" and that it probably happened every week. P additionally testified that each incident would last "a couple of minutes," during which the defendant would "try to put . . . his fingers inside [her] pants . . . ." P said that the defendant would also touch her "bra area, [her] vagina, [her] back area, [her] butt . . . and [her] boobs."

The state specifically declined to offer this evidence under the propensity exception for uncharged sexual misconduct pursuant to § 4-5 (b) of the Connecticut Code of Evidence. Rather, the state offered the uncharged misconduct evidence under § 4-5 (c) for the purposes of proving intent, common plan or scheme, and completing the story of the defendant's pattern of conduct. The trial court overruled the defendant's objection, reasoning that the "state has carried its burden of proof that, pursuant to . . . § 4-5 (c), the proffered uncharged misconduct from [P] is so connected with the charge[d] conduct so as to be material and relevant to . . . the issue of the intent to commit the crime charged in the information. . . . The court, also having . . . [per]formed the balancing test necessary, finds that the probative value in the case of this sort and, specifically, on these facts, outweighs any prejudicial tendency, especially with the proper limiting instruction, which this court will give, and also that the allegations are not too remote in time to diminish the probative value."[6]

In the state's case-in-chief, P testified regarding the two charged incidents of January 5 and December 24, 2015. She also testified that she recalled many other instances of the defendant's having touched her inappropriately, such as when he touched the "[i]nside of [her] vagina, [her] butt, [and her] boobs." The inappro-

priate touching occurred throughout the house but, more often than not, in P's bedroom. At various points in her testimony to the jury, P recounted that the defendant touched her inappropriately "[o]ver ten times," that the inappropriate touching took place "[f]requently"; she agreed with the prosecutor that the touching took place "about ten times and [that] it was essentially the same conduct each of those times," and she testified that the touching continued after December 24, 2015, until she began living with A in June, 2016.

Immediately after P's testimony, the court gave the jury the following limiting instruction: "[C]ertain testimony from [P] as to evidence of the commission by the defendant of other criminal sexual behavior may be considered by you if you believe it and [you find it] relevant to prove that the defendant had the intent to— engage in the type of criminal sexual behavior with which he's charged and that such criminal sexual behavior was not a mistake or an accident. Any testimony or evidence which I identify as being for a limited purpose, that you will consider only as it relates to the limits for which it is allowed, and you should not consider such testimony and evidence in finding any other facts as to any other issue. Any other such use of testimony or evidence would be improper."

The trial court also admitted into evidence as full exhibits the video recordings of the two forensic interviews of P under the hearsay exception for medical diagnosis and treatment set forth in § 8-3 (5) of the Connecticut Code of Evidence. In the first interview, P disclosed that the defendant touched her vagina and buttocks with his hands from the summer of 2014 to May, 2016. In the second interview, P said that the touching started in 2014 but, at another point in the interview, indicated that it began in 2015. P related that the touching had occurred "all the time" and "every other day." P also said that the defendant had performed oral sex on her, put his mouth on her breasts, and digitally penetrated her anus. The trial court did not give the jury a limiting instruction before or after it viewed the videos.

In its final instructions, the trial court charged the jury that, "[a]s to other misconduct of [the] defendant, the state has offered evidence of other acts of misconduct of the defendant. This is not being admitted to prove the bad character, propensity or criminal tendencies of the defendant. Such evidence is being admitted solely to show or establish (1) the defendant's intent, and (2) the absence of mistake or accident on the part of the defendant. You may not consider such evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charged or to demonstrate a criminal propensity. You may consider such evidence if you believe it and further find that it logically, rationally and conclusively supports the issues

for which it is being offered by the state but only as it may bear on the issues of the defendant's intent and the absence of mistake or accident on the part of the defendant." As to the forensic interview videos, the trial court charged the jury that "[s]tatements made by a complainant to a professional—professional, pursuant to receiving or seeking treatment, have been admitted as substantive evidence in exhibits 6A and 7A. This means that your consideration of these statements is not limited to credibility or corroboration. These statements may be fully considered for their content."

In his closing argument, the prosecutor specifically relied on this prior uncharged misconduct evidence. For example, the prosecutor stated that "[t]he evidence here clearly demonstrates that this defendant repeatedly violated this trust, touching [P] in a sexual and indecent manner to suit his whims." He did not confine his argument to the January 5 and December 24, 2015 incidents alleged, which took place during one calendar year. Rather, the prosecutor argued to the jury that the "relevant time line that you need to consider is framed by two school years—the conclusion of the sixth grade year to essentially the conclusion of the eighth grade year. Most likely, this is summer, 2014, to May, early June of 2016. And you heard testimony from various people that supports that. . . . The four counts that the defendant is charged with fit squarely into that time frame, essentially in the middle of that time frame." The prosecutor asked the jury to look "at the two videos particularly to reconcile [the defendant's] role as a protector with this physically and emotionally violating conduct that took place, that she testified happened *repeatedly, not just on her* [*brother's*] *birthday or* [*the*] *holiday* . . . ." (Emphasis added.)

I

Because it is useful in framing the dispositive evidentiary issue in this appeal, we begin with the state's claimed alternative ground to affirm the judgment. Specifically, the state argues that the evidence of uncharged misconduct, detailed by P both in her trial testimony and forensic interviews, was admissible as propensity evidence under § 4-5 (b) of the Connecticut Code of Evidence and *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008). The state argues that we should therefore affirm the judgment of conviction on this alternative ground. See Practice Book § 63-4 (a) (1).

The state concedes, as it must, that it "did not request that the uncharged misconduct evidence be admitted for propensity purposes, and the trial court did not instruct the jury that it could be used as such." In fact, after the prosecutor proffered the uncharged misconduct "as both intent and sort of a common plan or scheme," the trial court asked him whether he had any response to defense counsel's argument that the evidence should not come in under § 4-5 (b) to prove

propensity to commit the charged crimes. The prosecutor forthrightly declined "to characterize [the evidence] as propensity" and noted specifically that he did not intend to argue that "there is a particular propensity as a character trait." Accordingly, the trial court admitted the evidence only under § 4-5 (c) as relevant to prove intent or the absence of mistake or accident, and instructed the jury not to consider the evidence as propensity evidence. On this record, we cannot accept the state's invitation to affirm the judgment on its claimed alternative ground.

"[O]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. . . . This rule applies equally to alternat[ive] grounds for affirmance." (Internal quotation marks omitted.) *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 498–99, 43 A.3d 69 (2012). "Such exceptional circumstances may occur [when] a new and unforeseen constitutional right has arisen between the time of trial and appeal or [when] the record supports a claim that a litigant has been deprived of a fundamental constitutional right and a fair trial. . . . An exception may also be made [when] consideration of the question is in the interest of public welfare or of justice between the parties." (Internal quotation marks omitted.) Id., 499–500. None of those circumstances is present in this appeal.

And, although it is true that "this court may rely on any grounds supported by the record in affirming the judgment of a trial court"; *State* v. *Burney*, 288 Conn. 548, 560, 954 A.2d 793 (2008); the record is lacking support in a critical way: we do not know precisely how the trial court would have exercised its discretion had it been called on to determine whether to admit the uncharged misconduct for propensity purposes. Put differently, if the issue had been preserved, we would afford significant deference to the trial court's admission of propensity evidence, reviewing it only for abuse of discretion. See, e.g., *State* v. *Mark T.*, 339 Conn. 225, 232, 260 A.3d 402 (2021). Essentially, the state asks us to defer to discretion that the trial court never exercised or was asked to exercise. See *State* v. *Fernando V.*, 331 Conn. 201, 212–13, 202 A.3d 350 (2019). Sound principles of appellate review counsel otherwise.[7]

We previously have concluded that, "[w]hen a trial court that has excluded (or admitted) evidence for the wrong reason nonetheless would have been *required* to make the same evidentiary ruling on the unpreserved alternative ground *as a matter of law*, there is no reason that a reviewing court should be prevented from substituting the legally compelled ground for the legally flawed ground. The present case is altogether different, however, because it involves an unpreserved alternative ground [propensity] that ordinarily is *discretionary* in

nature; the state has not, and could not, argue that the trial court . . . 'would have been forced to rule' in its favor on this ground." (Emphasis in original.) Id., 213 n.4; see also *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 569, 916 A.2d 5 (2007) (addressing unpreserved alternative ground for affirmance because both parties relied on same factual basis in support of their claims on appeal, claim involved pure question of law, there was no possibility that court would be usurping discretion of decision maker, record was adequate for review, and, because issue had been fully briefed, there was no possibility of prejudice to parties); cf. *Grady* v. *Somers*, 294 Conn. 324, 349–50 n.28, 984 A.2d 684 (2009) (reaching alternative ground for affirmance when "it is a question of law, the essential facts of which are undisputed, over which our review is plenary," and plaintiff, who raised issue at trial and on appeal, would not be prejudiced or unfairly surprised). A discretionary issue such as the one before us—regardless of whether the uncharged misconduct is offered for propensity purposes under § 4-5 (b) or for other purposes allowed under § 4-5 (c)—is not "one that the trial court would have been forced to rule in favor of the [party prevailing at trial]." *Zahringer* v. *Zahringer*, 262 Conn. 360, 371, 815 A.2d 75 (2003), quoting W. Horton & S. Cormier, Rules of Appellate Procedure (2003 Ed.) § 63-4 (a) (1), authors' comment, p. 138.

"[A]s a general rule, evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. . . . Nor can such evidence be used to suggest that the defendant has a bad character . . . ." (Internal quotation marks omitted.) *State* v. *Meehan*, 260 Conn. 372, 392, 796 A.2d 1191 (2002); see also Conn. Code Evid. § 4-5 (a). This court has recognized an exception to the general rule for sexual offenses: evidence of uncharged sexual misconduct, assessed under a liberal standard, is admissible and relevant to "prove that the defendant had a propensity or a tendency to engage in the crime charged only if it is: '(1) . . . not too remote in time; (2) . . . similar to the offense charged; and (3) . . . committed upon persons similar to the prosecuting witness.' " *State* v. *DeJesus*, supra, 288 Conn. 473. The probative value of the evidence must also outweigh its prejudicial effect. Id. This exception is codified in § 4-5 (b) of the Connecticut Code of Evidence. The uncharged misconduct at issue, if it had been offered for propensity, would have required the trial court to determine whether it was not too remote in time, whether it was far more frequent and severe than the charged misconduct, and whether the probative value of the evidence outweighed its prejudicial impact. Because the trial court was not afforded the opportunity to weigh the applicable factors and determine if, in its discretion, it would admit the uncharged misconduct as evidence to prove propensity, we would be "usurp[ing] the trial court's discretion" as

the decision maker to rule that the evidence would have been admitted or admitted in its entirety. (Internal quotation marks omitted.) *Vine* v. *Zoning Board of Appeals*, supra, 281 Conn. 569.

The state relies on *DeJesus* and *State* v. *Johnson*, 289 Conn. 437, 456–57, 958 A.2d 713 (2008), overruled in part on other grounds by *State* v. *Payne*, 303 Conn. 538, 34 A.3d 370 (2012), to support its contention that this court can assess whether the uncharged misconduct evidence could have been admitted under the propensity exception despite the state's failure to offer it for such purposes. In *DeJesus*, the trial court admitted uncharged sexual misconduct to prove intent and a common plan or scheme. See *State* v. *DeJesus*, supra, 288 Conn. 427. In *Johnson*, we assessed whether evidence admitted to prove intent or common scheme or plan was harmful and concluded that, assuming the evidence was not admissible to prove intent or common scheme or plan, the error was harmless because the evidence was admissible under the new propensity exception articulated in *DeJesus*. See *State* v. *Johnson*, supra, 456–57. In both cases, however, the trial court admitted the uncharged sexual misconduct by employing the same standard by which to assess and admit the evidence under the new propensity exception. In the present case, to admit the uncharged misconduct for propensity purposes, the trial court would have had to conduct a different inquiry than it did when it admitted the evidence for the purpose of proving intent.

Not only did the state not raise the propensity issue before the trial court and thereby ask for such a discretionary ruling, it affirmatively stated that it did not intend to offer P's testimony about the numerous other acts of sexual abuse that occurred across a period of two years to show propensity on the defendant's part. We cannot speculate about what defense counsel would have argued or whether he would have asked the trial court to limit the evidence of other alleged acts as indicative of propensity on the defendant's part. We also have no record from which to assess whether the trial court, if, after conducting a § 4-5 (b) analysis, would have exercised its discretion to admit the evidence or limit its scope. Further, if the evidence had been offered and admitted to prove the defendant's propensity or tendency to engage in aberrant sexual misconduct, the trial court would have issued a different limiting instruction to the jury.[8] We likewise cannot assess whether the jury would have considered the evidence differently or come to a different verdict because the trial court specifically instructed the jury several times not to consider the evidence for propensity purposes. The state cannot now take shelter in the liberal standard for the admission of uncharged sexual misconduct evidence for propensity purposes on appeal. "Under these circumstances, we decline to review the state's unpreserved claim." *State* v. *Fernando V.*, supra, 331 Conn.

213.

## II

We now turn to the sole basis on which the trial court admitted the uncharged misconduct under § 4-5 (c) of the Connecticut Code of Evidence. The defendant contends that the trial court abused its discretion by admitting this evidence because it was irrelevant, as neither specific intent, accident, nor absence of mistake was at issue. He argues that (1) intent was not presumptively at issue because he was charged only with general intent crimes, not specific intent crimes, and (2) intent was not affirmatively at issue because his theory of defense was that the conduct never happened at all, not that the conduct occurred as a result of unintentional actions. We agree with the defendant.

"Evidence that is not relevant is inadmissible." Conn. Code Evid. § 4-2. "It is axiomatic that the [t]rial court's ruling on the admissibility of evidence is entitled to great deference. . . . In this regard, the trial court is vested with wide discretion in determining the admissibility of evidence, including issues of relevance . . . . Accordingly, [t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be made in favor of the correctness of the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *Mark T.*, supra, 339 Conn. 232.

"Section 4-1 of the Connecticut Code of Evidence provides: 'Relevant evidence means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence.' . . . This concept embodies two components: (1) probative value, and (2) materiality. Conn. Code Evid. § 4-1, commentary . . . . Regarding the second component, '[t]he materiality of evidence turns [on] what is at issue in the case, which generally will be determined by the pleadings and the applicable substantive law.' Conn. Code Evid. § 4-1, commentary . . . . 'The degree to which any evidence is material and relevant must be assessed in light of the fact or issue that it was intended to prove.' " (Citations omitted.) *State* v. *Mark T.*, supra, 339 Conn. 241–42.

Although the general rule precludes admission of evidence of prior misconduct to prove the bad character, propensities, and criminal tendencies of a defendant, this evidence may be admissible for other purposes. For example, prior misconduct evidence may be relevant because it is probative of and material "to prove knowledge, intent, motive, and common scheme or design, if the trial court determines, in the exercise of judicial discretion, that the probative value of the evidence out-

weighs its prejudicial tendency." (Internal quotation marks omitted.) *State* v. *Meehan*, supra, 260 Conn. 392; see Conn. Code Evid. § 4-5 (c). "The absence of mistake or accident exception . . . is a close corollary of the intent exception: evidence of prior misconduct may be admissible for the purpose of showing that an action was intentional and not mistaken or accidental." (Internal quotation marks omitted.) *State* v. *Beavers*, 290 Conn. 386, 400–401, 963 A.2d 956 (2009).

Our case law distinguishes between using evidence to prove an act and using evidence to prove intent. See *State* v. *Meehan*, supra, 260 Conn. 396. "Because intent is almost always proved, if at all, by circumstantial evidence, prior misconduct evidence, [when] available, is often relied [on]." *State* v. *Baldwin*, 224 Conn. 347, 355, 618 A.2d 513 (1993). In *State* v. *Meehan*, supra, 396–97, this court catalogued appellate cases in which evidence was irrelevant and inadmissible to prove an act but relevant and admissible to prove intent to commit that act. See *State* v. *Baldwin*, supra, 353–56 (evidence of defendant being observed running to cars and found in possession of narcotics was irrelevant and inadmissible to prove act of possession but relevant and admissible to prove possession with intent to sell); *State* v. *Tucker*, 181 Conn. 406, 415–16, 435 A.2d 986 (1980) (evidence of prior acts of child abuse against same victim was inadmissible to prove act of murder but admissible to prove specific intent to murder and lack of accident); *State* v. *James*, 54 Conn. App. 26, 40–41, 734 A.2d 1012 (evidence of defendant's prior threats against victim was irrelevant and inadmissible to prove act of killing but relevant and admissible to prove intent and motive to kill her), cert. denied, 251 Conn. 903, 738 A.2d 1092 (1999); *State* v. *Cepeda*, 51 Conn. App. 409, 433, 723 A.2d 331 (prior aggression against victim was irrelevant and inadmissible to prove act of shooting but relevant and admissible to prove intent and motive to shoot victim), cert. denied, 248 Conn. 912, 732 A.2d 180 (1999).

We have noted the fine line between using uncharged misconduct to prove intent and using it to show the defendant's bad character or propensity to commit the crime charged. See *State* v. *Meehan*, supra, 260 Conn. 395–96. The risk that the evidence will be improperly is particularly high when the uncharged misconduct is "extrinsic," meaning, separate and distinct from the crime charged, because the uncharged misconduct "is practically indistinguishable from prohibited propensity evidence. Uncharged misconduct may logically be used to rebut a claim of mistake or no knowledge . . . but to use misconduct at one time to prove an intent to do the same thing at another time borders on the forbidden theme of 'once a thief always a thief.' " (Citation omitted.) E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 4.15.6, p. 176; see also *State* v. *Conroy*, 194 Conn. 623, 626, 484 A.2d 448 (1984)

("[E]vidence of similar but unconnected crimes is generally not admissible to prove a criminal defendant's guilt. Such evidence can show no more than the defendant's bad character or an abstract disposition to commit a crime; it provides no proof of guilt of the specific offense in question."). In light of these concerns, the state's introduction of uncharged misconduct is properly limited to cases in which the evidence is needed to "prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove." (Internal quotation marks omitted.) *State* v. *Beavers*, supra, 290 Conn. 402 n.17.

In the present case, the state was required to prove each element of first degree sexual assault, attempt to commit first degree sexual assault, and risk of injury to a child beyond a reasonable doubt to sustain the defendant's conviction. As the state concedes, all of these are crimes of general intent. Sexual assault in the first degree requires the state to prove that "(1) the defendant engage[d] in sexual intercourse with another person, (2) such other person is under thirteen years of age, and (3) the [defendant] is more than two years older than such person . . . ." (Internal quotation marks omitted.) *State* v. *Jose A. B.*, 342 Conn. 489, 534, 270 A.3d 656 (2022), quoting General Statutes § 53a-70 (a) (2); see also *State* v. *Pierson*, 201 Conn. 211, 215, 514 A.2d 724 (1986) ("[w]e have held that sexual assault in the first degree is a general intent crime with no element of specific intent"). The crime of attempt to commit sexual assault in the first degree requires the state to prove that the defendant acted with the mens rea "identical to the 'mental state required for commission of' the underlying offense." *State* v. *Pond*, 315 Conn. 451, 470, 108 A.3d 1083 (2015). Finally, risk of injury to a child in violation of § 53-21 (a) (2) requires the state to prove that the defendant "(1) . . . had contact with the intimate parts of, or subjected to contact with his intimate parts, (2) a child under the age of sixteen years, (3) in a sexually and indecent manner likely to impair the health or morals of such child." (Internal quotation marks omitted.) *State* v. *Jose A. B.*, supra, 535. As the state correctly notes in its brief to this court, general intent "is the term used to define the requisite mens rea for a crime that has no stated mens rea; the term refers to whether a defendant intended deliberate, conscious or purposeful action, as opposed to causing a prohibited result through accident, mistake, carelessness, or absent-mindedness. [When] a particular crime requires only a showing of general intent, *the prosecution need not establish that the accused intended the precise harm or precise result which resulted from his acts*." (Emphasis added; footnotes omitted.) 21 Am. Jur. 2d 213–14, Criminal Law § 127 (1998); see also *State* v. *Salamon*, 287 Conn. 509, 572, 949 A.2d 1092 (2008) (general intent is "an intent to

engage in certain conduct," and specific intent is "an intent to bring about a certain result"). Rather, as to all of these charges, the state needed to prove only that the defendant intended to "make the bodily movement [that] constitutes the act [that] the crime requires . . . ." (Internal quotation marks omitted.) *State* v. *Jose A. B.*, supra, 536, quoting *State* v. *James*, 211 Conn. 555, 586, 560 A.2d 426 (1989).

This burden of proof differs from the state's burden in specific intent crimes in which intent is a legislatively prescribed element that the state must prove beyond a reasonable doubt unless explicitly admitted by the defendant. See, e.g., *State* v. *Baldwin*, supra, 224 Conn. 356.[9] For example, sexual assault in the fourth degree is a specific intent crime, requiring the state to prove that the defendant acted with the intent to make "contact with the intimate parts of a person . . . for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor with a person . . . for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person." (Internal quotation marks omitted.) *State* v. *Jose A. B.*, supra, 342 Conn. 534–35; accord *State* v. *Roy D. L.*, 339 Conn. 820, 851, 262 A.3d 712 (2021).[10]

Intent can be at issue in a general intent crime case, such as sexual assault or risk of injury to a child, when the defendant poses as a defense that he touched the complainant innocently, or by accident or mistake. In *State* v. *John G.*, 100 Conn. App. 354, 918 A.2d 986, cert. denied, 283 Conn. 902, 926 A.2d 670 (2007), for example, the Appellate Court concluded that evidence of the defendant's prior misconduct was admissible to prove intent because the defendant argued that "he was simply an affectionate grandfather who enjoyed cuddling with his grandchildren . . . . The issue of intent, therefore, was central to the charges against the defendant, and, on the issue of intent, the evidence of prior sexual misconduct was especially relevant." Id., 365. Likewise, in *State* v. *Wild*, 43 Conn. App. 458, 462–65, 684 A.2d 720, cert. denied, 239 Conn. 954, 688 A.2d 326 (1996), evidence of prior sexual misconduct was admissible and relevant to prove intent because the defendant had stated to the police that his touching of the victim was the result of an epileptic seizure and that he may have been "unaware of what he was doing." Id., 462. The Appellate Court agreed with the state that these statements "brought the element of intent into question," and, therefore, the prior misconduct was admissible "to show that the defendant's touching of the victim's vaginal area was intentional, not inadvertent, and was not behavior of which the defendant was unaware or that he could not control." Id.

Consistent with our own cases, the United States Court of Appeals for the Second Circuit has similarly

long recognized, in interpreting rule 404 (b) of the Federal Rules of Evidence, the federal counterpart to § 4-5 (c) of the Connecticut Code of Evidence,[11] that "[a] dispute as to whether . . . a party performed a particular physical act is not an issue as to intent." *Hynes* v. *Coughlin*, 79 F.3d 285, 291 (2d Cir. 1996). "A defendant may . . . forestall the admission of [misconduct] evidence by advancing a theory that makes clear that the object [that] the [misconduct] evidence seeks to establish, while technically at issue, is not really in dispute. . . . For example, a defense theory that the defendant did not commit the charged act effectively removes the issue of intent and knowledge from the case." (Citation omitted.) *United States* v. *Siddiqui*, 699 F.3d 690, 702 (2d Cir. 2012), cert. denied, 569 U.S. 986, 133 S. Ct. 2371, 185 L. Ed. 2d 1089 (2013); see id. (defendant, charged with attempted murder of United States nationals, officers and employees, armed assault of United States officers and employees, using firearm during crime of violence, and assault of United States officers and employees, removed issue of intent with theory that she did not pick up and "fire the M-4 [rifle]").[12]Admitting this evidence only when necessary to prove an issue that has been placed in dispute is consistent with what we have recognized as a trial court's "duty to safeguard against undue prejudice in cases involving uncharged misconduct evidence. Indeed, we emphasize that our trial courts are required to take great caution in admitting this evidence and in ensuring that our juries use it only for its proper purpose." *State* v. *Ortiz*, 343 Conn. 566, 603 n.14,      A.3d      (2022).

In the present case, the defendant did not make the issue of intent "central to the charges" against him because his defense was that the touching never happened. Indeed, before the trial began, the defendant objected to the state's notice of intent to present evidence of his prior misconduct, arguing that it was inadmissible because he "denies any of the conduct that is alleged in this case." He never wavered from this defense during the trial or posed a different defense. This theory of defense did not raise a disputed issue of intent—either as a matter of general intent or as to a defense of mistake or accident. The jury was not required to find that, on the dates in question, the defendant *intended* to sexually assault P or *intended* to put her at risk of injury but only that he did, in fact, deliberately, consciously, or purposefully touch her so that the result of his actions constituted first degree sexual assault, attempt to commit first degree sexual assault, and risk of injury to a child. Although the prior misconduct evidence might be relevant to the defendant's general intent if he had raised a mistake or accident defense, it sheds no light on whether he purposefully touched P because it tended to show only that he had the propensity and proclivity to deliberately, consciously, or purposefully touch her. This is the very

inference prohibited by the rule rendering uncharged misconduct evidence generally inadmissible.

The state nevertheless argues under the guise of intent that the trial court properly admitted evidence of the defendant's uncharged misconduct because it "allowed the jury to learn that the defendant had a sexual interest[13] in [P], upon which the defendant acted by sexually abusing [P] before and during the charged period, and by continuing to do so until the last act of abuse." (Internal quotation marks omitted.) We can discern from this argument, however, nothing other than that the evidence showed a propensity to deliberately, consciously, or purposefully touch P. See Black's Law Dictionary (11th Ed. 2019) p. 1470 (defining "propensity" as "[a] natural tendency to behave in a particular way; esp[ecially], the fact that a person is prone to a specific type of bad behavior"). As explained previously, the prosecutor specifically conceded at trial that the state did not seek to admit this evidence for propensity purposes, and we will not allow the state to alter its theory on appeal. See, e.g., *State* v. *Mark T.*, supra, 339 Conn. 247–48. Without the theory of propensity underlying the state's argument, there is no link between this evidence and intent.[14] The uncharged misconduct evidence, therefore, was inadmissible because it was not relevant or material to the issues in this case.[15]

On remand, if the state again moves to admit the uncharged misconduct evidence, we leave it to the trial court's judgment to determine whether it would be appropriate to admit the evidence to prove propensity after conducting the necessary analysis under § 4-5 (b) of the Connecticut Code of Evidence.

### III

Having concluded that the trial court erroneously admitted the uncharged misconduct evidence, we must determine whether the defendant has demonstrated that this error was harmful. See, e.g., *State* v. *Mark T.*, supra, 339 Conn. 251 (defendant bears burden of demonstrating harmfulness of nonconstitutional evidentiary error). The defendant argues that the admission of the evidence harmed him because (1) without the uncharged misconduct evidence, the state's case was not strong, (2) the nature of the evidence was prejudicial because it inflamed the passions and the sympathy of the jurors by "portray[ing] an alleged pattern of abuse that was far more serious and frequent than the charged conduct," and (3) the state relied on the evidence in its closing summation to the jury. We agree with the defendant that the error was harmful.

"[W]hether [an improper ruling] is harmless in a particular case depends [on] a number of factors, such as the importance of the witness' testimony in the [defendant's] case, whether the testimony was cumulative, the presence or absence of evidence corroborating or

contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the . . . evidence on the trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Mark T.*, supra, 339 Conn. 251.

In child sexual assault cases, the state's case is often not strong in the absence of "corroborating physical evidence or any witnesses to the alleged sexual assault." *State* v. *Fernando V.*, supra, 331 Conn. 215–16. In the present case, there was no corroborating physical evidence or any witnesses to the alleged sexual assault. P's testimony and the testimony of those who spoke to her constituted the only evidence of the defendant's guilt, and, therefore, "this case largely turned on whether the jury believed" P. (Internal quotation marks omitted.) Id., 216.

Appellate courts often must determine whether the improper admission of evidence "may have [had] a tendency to excite the passions, awaken the sympathy, or influence the judgment, of the jury . . . ." (Internal quotation marks omitted.) *State* v. *Ellis*, 270 Conn. 337, 367–68, 852 A.2d 676 (2004). Uncharged misconduct evidence that leads the jury to conclude that the defendant had a propensity to commit acts of sexual misconduct—when that propensity evidence is not properly before the jury—is one example of evidence that will often yield such a result.

For example, in *Ellis*, this court concluded that the trial court had abused its discretion by admitting the testimony of three witnesses that the defendant sexually abused them; see id., 358; reasoning that the defendant's abuse of one of the three complainants was "far more frequent and severe." Id., 359. The uncharged misconduct was therefore not similar to the offense charged and inadmissible to prove the existence of a common scheme. Id., 363. We reasoned that, by improperly advising the jury that it could consider the uncharged misconduct as evidence of a common scheme, "the court permitted the jury to be influenced by evidence that was not relevant or material to the issues in [that complainant's] case." Id., 368. "That the defendant's abuse of the other [witnesses] was not as severe as his abuse of [that complainant] does not mean that the evidence of such abuse was harmless. The sheer quantity of testimony concerning the defendant's abuse of the other [witnesses] was likely to have been harmful in its cumulative effect [on] the jury's delibera-

tions." Id. In *State* v. *Gupta*, 297 Conn. 211, 998 A.2d 1085 (2010), overruled in part by *State* v. *Payne*, 303 Conn. 538, 34 A.3d 370 (2012), this court, relying on *Ellis*, similarly concluded that the trial court had abused its discretion by consolidating the cases against the defendant, a physician, because the testimony of one of the witnesses was too dissimilar and, thus, was irrelevant and not cross admissible in the cases against the defendant involving the other witnesses. See id., 226–28, 230–31. We focused on the fact that the defendant's misconduct as against one witness was "markedly different" and "far more egregious" than his misconduct against the other witnesses because, unlike the extent of the conduct alleged by those other witnesses, the scope of the inappropriate touching was broader and could not be mistaken for a legitimate medical examination. Id., 226.[16]

Likewise, in the present case, the admission of the uncharged misconduct evidence at issue was undoubtedly harmful. The charges against the defendant pertained only to two specific incidents that took place in January and December, 2015. The two charged incidents related to the defendant's touching the inside of P's vagina and his attempt to do so on another occasion. P's testimony before the jury, as well as the two forensic interview videos,[17] however, presented a much more shocking case than the state had charged in both the severity and the frequency of abuse. The uncharged misconduct broadened the scope of the alleged touching to include allegations that the defendant digitally penetrated her anus, performed oral sex on her, and put his mouth on her breasts. P testified that the defendant touched her inappropriately "[o]ver ten times," that the inappropriate touching took place "[f]requently," and agreed with the state that the touching took place "about ten times and [that] it was essentially the same conduct each of those times . . . ." The jury also heard P state in the forensic interview videos that the sexual abuse occurred "all the time" and "every other day." In both interviews, P claimed that the defendant sexually abused her from the summer of 2014, to May, 2016, although, at one point, she said that the touching had begun in the summer of 2015. If believed, P's statements expanded the uncharged misconduct potentially to hundreds of instances.

In his summation, the prosecutor argued that the "evidence here clearly demonstrates that this defendant *repeatedly* violated [the trust between a parent and child] . . . ." (Emphasis added.) The prosecutor further explained to the jury that the "relevant time line that you need to consider is framed by two school years—the conclusion of the sixth grade year to essentially the conclusion of the eighth grade year. Mostly likely, this is summer 2014 to May, early June, of 2016. . . . The four counts that the defendant is charged with fit squarely into that time frame, essentially in the mid-

dle of that time frame." This narrative went well beyond the nearly twelve month time period that the two charged incidents covered. The state pointed to the forensic interviews, asking the jury "to reconcile her father's role as a protector with this physically and emotionally violating conduct that took place that she testified happened *repeatedly, not just on her* [*brother's*] *birthday or* [*the*] *holiday . . . .*" (Emphasis added.)

As in *Ellis*, the trial court's instructions to the jury on the proper use of this evidence could not "cure the potential prejudice to the defendant." *State* v. *Ellis*, supra, 270 Conn. 368. The harm to the defendant is particularly acute in this case. The uncharged misconduct was far more severe and frequent than the charged conduct. The uncharged misconduct was admitted not to prove propensity but to prove the irrelevant issue of intent. The defendant likewise did not receive the proper jury instruction.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.

* In accordance with our policy of protecting the privacy interests of alleged victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the complainant or others through whom the complainant's identity could be ascertained. See General Statutes § 54-86e.

[1] Specifically, the defendant was convicted of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), one count of attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (1), and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).

[2] The defendant additionally claims that the trial court abused its discretion in admitting two video-recorded forensic interviews of the complainant and constancy of accusation testimony. Because we conclude that the erroneous admission of uncharged misconduct evidence entitles the defendant to a new trial, we do not need to reach his second and third claims.

[3] P testified that she specifically recalled the January 5, 2015 incident because it was her brother's birthday, and she was sitting on a couch next to the defendant when he put his hands in her pants and started touching her "private area." P's mother, S, who was on a separate section of the couch, had fallen asleep watching television. P testified that the touching went on for "a while, like, minutes," and that the defendant touched her under her clothing and inside her private area. The incident stopped when S woke up because P's aunt and grandmother were coming over.

[4] P testified that she specifically recalled the December 24, 2015 incident because it was Christmas Eve, and the defendant tried to touch her again. P was lying down in her room because her younger siblings were playing with Nerf guns and bothering her. P was in her room for approximately five minutes before the defendant came in and "tried to put his hand inside [her] pants," but, because everybody was "up and, like, laughing," he "didn't get to," and she was able to tell him, "no, like, don't like touch me." P testified that she thought she had the ability to say "no" during this incident because there were other people alert and "up and around" in the house.

[5] The state's original information charged the defendant with committing sexual assault in the first degree on or about January 5, 2015, risk of injury to a child on or about January 5, 2015, attempt to commit sexual assault in the first degree on or about December 24, 2015, risk of injury to a child on or about December 24, 2015, sexual assault in the fourth degree on or about diverse dates from January, 2015, to May, 2016, and risk of injury to a child on or about diverse dates from January, 2015, to May, 2016. The state later abandoned the last two charges in its substitute long form information.

[6] The trial court cited as support *State* v. *Donald H. G.*, 148 Conn. App. 398, 84 A.3d 1216, cert. denied, 311 Conn. 951, 111 A.3d 881 (2014), and *State* v. *Tucker*, 181 Conn. 406, 435 A.2d 986 (1980).

[7] Indeed, in dictum, we have previously agreed with the principle that the state waives its ability to contest on appeal an alleged error that it has induced, thereby removing it as a potential alternative ground for affirmance. See *State* v. *Marquez*, 291 Conn. 122, 138 n.14, 967 A.2d 56 (2009), cert. denied, 558 U.S. 895, 130 S. Ct. 237, 175 L. Ed. 2d 163 (2009); see also *State* v. *Cruz*, 269 Conn. 97, 105, 848 A.2d 445 (2004) ("a party who induces an error cannot be heard to later complain about that error").

[8] Even in a case in which evidence of sexual misconduct is offered by the state to establish both propensity under § 4-5 (b), and any of the specific purposes allowed under § 4-5 (c), such as absence of mistake or common plan or scheme, the trial court would have to instruct the jury that the evidence was admissible for both purposes.

[9] We are therefore not convinced by the state's citation of cases involving specific intent crimes to support the proposition that the defendant's intent in a general intent case "is always in issue unless directly and explicitly admitted before the trier of fact." (Internal quotation marks omitted.) See, e.g., *State* v. *Baldwin*, supra, 224 Conn. 356. As explained, the state's burden of proving intent in a specific intent crime case differs significantly from its burden in a general intent crime case and unfairly borders on propensity evidence when used in such a way. The state cannot use the logic of specific intent cases to overwhelm a general intent case with uncharged misconduct.

[10] In fact, the state initially charged the defendant with having committed sexual assault in the fourth degree on or about diverse dates from January, 2015, to May, 2016, and risk of injury to a child on or about diverse dates from January, 2015, to May, 2016. The state later abandoned those charges in the substitute information it filed. See footnote 5 of this opinion.

[11] See Fed. R. Evid. 404 (b) (1) and (2) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."); see *State* v. *Hedge*, 297 Conn. 621, 649, 1 A.3d 1051 (2010) ("there is no substantive difference between the pertinent federal and Connecticut rules [of evidence governing evidence of other crimes, wrongs or acts]" (internal quotation marks omitted)).

[12] We leave it to the sound discretion of our trial courts to determine the precise procedure to employ in a particular case, consistent with their "duty to safeguard against undue prejudice in cases involving uncharged misconduct evidence." *State* v. *Ortiz*, 343 Conn. 566, 603 n.14,     A.3d     (2022). We note with approval, however, procedures employed by several other state and federal courts when defendants have sought to remove the issue of intent through a particular defense theory, thereby implicating how trial courts should handle the admission of uncharged misconduct evidence. By detailing the procedures undertaken in these jurisdictions, we merely intend to emphasize the caution that courts must take in admitting this evidence and that, often, a court's appropriate exercise of its discretion becomes more informed as the trial plays out.

For example, the approach of the Supreme Court of Michigan is commendable, requiring that the state provide pretrial notice of its intent to introduce uncharged misconduct evidence and that the defendant articulate his or her theory of defense. See *People* v. *VanderVliet*, 444 Mich. 52, 89–90, 508 N.W.2d 114 (1993). In doing so, the court encourages flexibility in a trial court's exercise of discretion, allowing them to rule on the admission of uncharged misconduct using pretrial procedures if there is "a record basis to reliably determine the relevance and admissibility of other acts evidence"; id.; but cautioning that, if "the [trial] court still remains uncertain of an appropriate ruling at the conclusion of the prosecutor's other proofs, it should permit the use of other acts evidence on rebuttal, or allow the prosecution to reopen its proofs after the defense rests, if it is persuaded in light of all the evidence presented at trial, that the other acts evidence is necessary to allow the jury to properly understand the issues . . . ." (Citation omitted.) Id., 90.

In federal courts within the Second Circuit, "if the evidence is offered to prove the defendant's knowledge or intent, the offer of similar acts evidence should await the conclusion of the defendant's case and should be aimed at a specifically identified issue. This enables the trial judge to determine whether the issue sought to be proved by the evidence is really in dispute and, if so, to assess the probative worth of the evidence on this issue against its prejudicial effect." (Internal quotation marks omitted.) *United States* v. *Colon*, 880 F.2d 650, 660 (2d Cir. 1989). The United States Court of Appeals

for the Tenth Circuit has similarly explained that, although it is preferable to delay the admission of uncharged misconduct evidence until after the defense rests "because it places the trial court in the best position to determine whether the issue sought to be proved by the extrinsic act evidence is really in dispute," a trial court does not abuse its discretion by admitting uncharged misconduct during the government's case-in-chief when it is obvious that the proper issue will be in dispute. (Internal quotation marks omitted.) *United States* v. *Robertson*, 297 Fed. Appx. 722, 725 n.1 (10th Cir. 2008).

This was approximately the procedure undertaken in the present case. The state provided notice of its intent to use evidence of prior uncharged misconduct, and the trial court appropriately convened a pretrial hearing. This process appears to be the practice of the state and of trial courts in cases our research has revealed. See, e.g., *State* v. *O'Brien-Veader*, 318 Conn. 514, 544–45, 122 A.3d 555 (2015); *State* v. *Acquin*, 34 Conn. Supp. 152, 153, 381 A.2d 239 (1977).

[13] Uncharged misconduct evidence to prove a defendant has a sexual interest or "lustful inclination" toward a particular victim is more accurately characterized as evidence showing motive, propensity, or specific intent, as opposed to general intent. Compare *State* v. *Donald H. G.*, 148 Conn. App. 398, 409, 84 A.3d 1216 (uncharged sexual misconduct was admissible in case involving charges of first degree sexual assault, third degree sexual assault, and risk of injury to child because it was "probative of the defendant's intent and his motive for committing the acts of sexual abuse against the victim, namely, his lustful inclinations toward this specific victim"), cert. denied, 311 Conn. 951, 111 A.3d 881 (2014), with *State* v. *James*, supra, 211 Conn. 557, 578 (uncharged sexual misconduct to show defendant's sexual interest or lustful inclination toward particular victim was relevant and admissible to prove motive in case involving charges of attempt to commit second degree sexual assault, fourth degree sexual assault, and risk of injury to child). Because the state in the present case did not offer the uncharged misconduct evidence at trial to prove motive and does not rely on motive as an alternative ground for affirmance on appeal, we do not address whether the evidence would have been admissible for that purpose.

[14] Additionally, the state's reliance on *State* v. *Anthony L.*, 179 Conn. App. 512, 525, 179 A.3d 1278, cert. denied, 328 Conn. 918, 181 A.3d 91 (2018), and other Appellate Court cases preceding it, is misplaced because those cases did not involve whether uncharged sexual misconduct was relevant to general intent; rather, the evidence in those cases was relevant to motive under § 4-5 (c) or propensity under § 4-5 (b) of the Connecticut Code of Evidence. We find all of the Appellate Court cases the state cites either distinguishable or uninstructive. In *Anthony L.*, the defendant challenged the uncharged misconduct evidence only as being more prejudicial than probative and did not contest the evidence as being irrelevant to intent. See id., 523–25. The state also erroneously relies on *State* v. *Gonzalez*, 167 Conn. App. 298, 310, 142 A.3d 1127, cert. denied, 323 Conn. 929, 149 A.3d 500 (2016), a specific intent case in which the uncharged misconduct was admitted to prove not only intent but also motive and a system of criminal activity. *State* v. *Barry A.*, 145 Conn. App. 582, 595, 76 A.3d 211, cert. denied, 310 Conn. 936, 79 A.3d 889 (2013), relies on *State* v. *DeJesus*, supra, 288 Conn. 466, in which this court created an evidentiary exception to permit the admission of uncharged sexual misconduct to prove propensity. Thus, the court in *Barry A.* concluded that uncharged sexual misconduct was properly admitted under a different evidentiary exception to prove "the defendant's motive or intent in committing the charged crime." *State* v. *Barry A.*, supra, 595. While *State* v. *Raynor*, 84 Conn. App. 749, 854 A.2d 1133, cert. denied, 271 Conn. 935, 861 A.2d 511 (2004), held that uncharged misconduct was properly admitted against a defendant charged only with general intent crimes to show that "he had a sexual interest in thirteen year old girls" and, further, that the misconduct "tended to show that he possessed the requisite general intent to commit a sexual assault on a thirteen year old girl"; id., 760; the court also held that the uncharged misconduct was relevant and admissible to prove motive. See id., 759–60. Last, in *State* v. *Faria*, 47 Conn. App. 159, 171–73, 703 A.2d 1149 (1997), cert. denied, 243 Conn. 965, 707 A.2d 1266 (1998), the court ultimately held that the uncharged misconduct evidence offered to prove intent and motive in a sexual assault and kidnapping case was inadmissible because the prejudicial impact of the evidence outweighed its probative value.

[15] The defendant argues that the trial court also abused its discretion in admitting this evidence because the prior uncharged misconduct was more

prejudicial than probative, as it "portrayed an alleged pattern of abuse that was far more serious and frequent than the charged conduct . . . ." We hold that this evidence was irrelevant as offered and, thus, inadmissible, and do not address this alternative argument.

[16] Admittedly, the inadmissible evidence in *Ellis* and *Gupta* came from several witnesses and not the same complainant. But, because the state in the present case specifically declined to offer the uncharged misconduct evidence to prove propensity, we cannot assess how the trial court would have considered the implication that the uncharged misconduct was coming into evidence through the prosecuting witness, as opposed to other witnesses. It would therefore constitute a different exercise of discretion if the trial court had been asked to admit the evidence to prove propensity rather than intent.

[17] The state contends that, because the defendant did not object to the forensic interview videos as containing uncharged misconduct, any argument as to that evidence is unpreserved and unreviewable. We disagree. Practice Book § 60-5 provides in relevant part that, "[i]n jury trials, [when] there is a motion . . . pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same. . . ." In light of the broad wording of the pretrial pleadings, we read the trial court's subsequent ruling admitting uncharged misconduct as reaching any evidence of prior bad acts, not just limited to P's trial testimony, to prove the issue of intent. The defendant was not required to restate or repeat his objection to the uncharged misconduct in the videos because his earlier motion in limine and objection, having received a final adverse ruling by the trial court earlier in the trial, preserved his claim that any evidence of prior uncharged misconduct was irrelevant and inadmissible. See, e.g., *State* v. *Johnson*, 214 Conn. 161, 169–70, 571 A.2d 79 (1990); *State* v. *Patel*, 186 Conn. App. 814, 842–44, 201 A.3d 459, cert. denied, 331 Conn. 906, 203 A.3d 569 (2019).

---